JOSEPH S. GASSER, JR., APPELLANT, *v.* JET CRAFT
LTD., A NEVADA CORPORATION, RESPONDENT.

No. 6320

July 15, 1971                                      487 P.2d 346

*L. Earl Hawley,* of Las Vegas, for Appellant.

*George E. Graziadei,* of Las Vegas, for Respondent.

## OPINION

By the Court, GUNDERSON, J.:

Scotti leased to respondent premises near McCarran Airport at Las Vegas, for a 25-year term, with an option to purchase the property for $82,500 after 10 years. At a cost of nearly $600,000, respondent constructed an aircraft hangar, and began assembling aircraft with the help of Flamingo Pools, which built the fuselages. By Spring of 1969, when Scotti transferred

his interests to appellant, the hangar was substantially completed, except for off-site improvements, installation of fire hydrants, paving of parking areas, and the like. Respondent's building permit has never been revoked; nor has Clark County proceeded against respondent for any building violation. Some suppliers recorded liens against the premises, two remaining of record when this action was tried. Two creditors obtained judgments against respondent; one levied execution against the premises; whereupon, appellant purchased respondent's interests at execution sale, subject to respondent's right of redemption. Having attempted to tender some of the monies claimed in this action, respondent deposited in escrow sums it deems owing to appellant or to Scotti.

Before instituting this action, appellant purportedly served a notice "pursuant to the requirements of the Nevada Revised Statutes," allowing respondent "five (5) days to depart from the premises," without specifying any supposed breaches or demanding they be corrected. Appellant's Complaint, to which this "notice" was attached, was almost as cryptic. It alleged that respondent had "breached the said lease as to each of the following paragraphs: (h), (i), (j), (k), and (l)."[1] It further alleged: that respondent owed $3,000 as rent; that $5,000 was owing "for the breach of section (h) of the said lease in that defendant has destroyed the building referred to in said paragraph (h) and has paid only $5,000.00 under said agreement";

---

[1] Under paragraph (h), Scotti retained the right to collect rents from a dwelling on the premises, until paid $10,000; then, respondent was to acquire "all rights in and to said dwelling."

By paragraph (i), respondent agreed to "save and keep" Scotti and the premises "free and harmless of and from all liability on account of or in respect to any mechanics' lien or liens in the nature thereof for work and labor done or materials furnished at the instance and request of Corporation or nominee in, on, and about the demised premises"; however, respondent was to "have the right to contest the claim of such lien," in which event it was to furnish a bond.

Paragraph (j) required respondent "to save and hold Scotti harmless from any and all claims of any kind whatsoever arising out of this lease or use of the demised premises," and to defend suits involving the premises brought against Scotti.

Paragraph (k) provided, among other things, that respondent "may not assign or sublet the lease premises without written consent," which Scotti agreed "not to unreasonably withhold."

Paragraph (l) undertook to provide for such contingencies as insolvency, bankruptcy, and receivership; and also declared, "in the event any execution or attachment shall issue against Corporation or nominee or any of the effects of Corporation or nominee and will remain in force for a period of more than thirty (30) days . . . Scotti may at his option terminate this lease and the same shall become null and void and thereafter of no effect whatsoever."

and that appellant had "been forced to pay for a judgment against defendant in the sum of $14,108.98." Referring to a recent letter by which the Clark County Planning Commission had recited items "to be adhered to before a certificate of occupancy can be granted and prior to any business licenses being issued," the Complaint also alleged respondent's occupation was "in violation of County Ordinances."

As appellant invoked NRS 40.340, which gives priority to unlawful detainer actions, the case was tried shortly after respondent's Answer was filed, apparently without any pre-trial discovery. From the trial transcript, the parties' trial briefs, and briefs and arguments to this court, we have attempted to glean their respective theories of the case. Most of the supposed breaches for which appellant claimed a right of forfeiture are involved in his assignments of error, which we treat in this Opinion. Respondent not only contended that no actionable breach had occurred, and that forfeiture would in any event be inequitable, but that appellant's purported "notice to quit" did not satisfy NRS 40.250. Having prevailed upon the merits, respondent has not pressed the latter question on appeal; nonetheless, as it is jurisdictional, we deem it the threshold issue as regards all appellant's assignments of error.[2]

1. Under NRS 40.250(3), a tenant is guilty of an unlawful detainer "[w]hen he continues in possession in person or by subtenant, after default in the payment of any rent and after a notice in writing, requiring in the alternative the payment of the rent or the surrender of the detained premises, shall have remained uncomplied with for a period of 5 days after service thereof." Although appellant served no such notice, he contends that "[t]he court erred in failing to find and rule on the issue as to rents due and owing."

We held long ago that when forfeiture is claimed for failure to pay rent, a proper notice to quit is a jurisdictional requisite, which the landlord must plead and prove. "This demand is indispensable; it is as necessary to be made before suit as it is that the relation of landlord and tenant should exist." Paul v.

---

[2]At the time of oral argument before this court, appellant's counsel was asked what provisions of our law he had relied on when preparing appellant's "notice to quit." He was afforded an opportunity to state his position in writing, and responded: "Pursuant to the instructions of the Supreme Court, this is to advise you that the Section of Nevada Revised Statute 40 relied upon with reference to the Notice to Vacate in the above-entitled matter was NRS 40.250, subsection (4). Appellant also looked to NRS 40.250 subsection (5), which required no notice."

Armstrong, 1 Nev. 82, 98 (1865). It must be "explicit and positive, fulfilling strictly the requirements of the statute." Roberts v. District Court, 43 Nev. 332, 340, 185 P. 1067, 1069 (1920). Thus, many courts hold the notice must not only be in the alternative, demanding payment of the rent or surrender of the premises, but also must correctly state the precise amount of rent due.[3] Because our statute does not require the amount of rent to be specified in the notice, we have held that "a notice which simply demands the payment of rent or surrender of possession would seem to satisfy our law." Volpert v. Papagna, 83 Nev. 429, 433, 433 P.2d 533, 535 (1967). Still, a notice that does not demand rent, either in the alternative or at all, must be held deficient, else NRS 40.250(3) would have no real meaning at all. Accordingly, insofar as this unlawful detainer action claimed restitution for default in payment of rent, error may not be predicated upon the lower court's supposed failure to make findings, because the court was without jurisdiction in the premises.

It has been held that when the lessor fails to prove an unlawful detainer, his claim for accrued rent is a mere incident of the action, which fails when the main object fails. Markham v. Fralick, 39 P.2d 804 (Cal. 1934); Fontana Industries, Inc. v. Western Grain & Fer. Co., 334 P.2d 611 (Cal.App. 1959); cf. Arnold v. Krigbaum, 146 P. 423 (Cal. 1915). Our statutes appear to require this result. Only if judgment for a plaintiff is entered pursuant to NRS 40.360(1), does it appear the court may assess damages, and claims for rent, under the provisions of NRS 40.360(2).[4] (Indeed, NRS 40.360(2) arguably permits

---

[3]See: Johnson v. Sanches, 132 P.2d 853 (Cal.App. 1942); Dertiman v. Almey, 207 P.2d 615 (Cal.App. 1949); Werner v. Sargeant, 264 P.2d 217 (Cal.App. 1954); J. B. Hill Co. v. Pinque, 178 P. 952 (Cal. 1919). On the general question of the jurisdictional character of a notice to quit, see: Hall v. Haines, 51 P.2d 570 (Okl. 1935), holding that a plaintiff who did not join in giving a notice to quit may not maintain an action of unlawful detainer based on such notice; Thisius v. Sealander, 175 P.2d 619 (Wash. 1946), holding that a demand which is not sufficiently particular to enable a tenant to know precisely what is necessary to preserve his tenancy will not support an action for unlawful detainer; and Little v. Catania, 297 P.2d 255 (Wash. 1956), holding that where an appropriate notice to quit was neither pleaded nor proved in an unlawful detainer action, a judgment of unlawful detainer could not properly be entered.

[4]40.360  Judgment; damages; execution and enforcement.

"1.  Judgment.  If, upon the trial, the verdict of the jury, or, if the case be tried without a jury, the finding of the court, be in favor of

a judgment for rent only when the "alleged unlawful detainer *be after default in the payment of rent.*") Thus, unless respondent was guilty of some unlawful detainer, the lower court clearly did not err in failing to determine the amount of rent owing by respondent.

2.  Under NRS 40.250(4), a tenant is guilty of an unlawful detainer "[w]hen he assigns or sublets the leased premises contrary to the covenants of the lease, or commits or permits waste thereon, or when he sets up or carries on therein or thereon any unlawful business, or when he suffers, permits or maintains on or about the premises any nuisance, and remains in possession after service upon him of 3 days' notice to quit." Appellant contends the lower court erred "in its finding of no sufficient evidence of subletting or assignment to Flamingo Pools and as to no violation of Section "k" of the lease."[5]

When assignment or subletting is concerned, it may be contended that notice to quit need not be stated in the alternative, because such a breach cannot be cured. Richard v. Degen & Brody, Incorporated, 5 Cal.Rptr. 263 (Cal.App. 1960); cf. Salton Community Services District v. Southard, 64 Cal.Rptr. 246 (Cal.App. 1967); cf. Hignell v. Gebala, 202 P.2d 378

the plaintiff and against the defendant, judgment shall be entered for the restitution of the premises; and, if the proceeding be for unlawful detainer after neglect or failure to perform any condition or covenant of the lease or agreement under which the property is held, or after default in the payment of rent, the judgment shall also declare the forfeiture of such lease or agreement.

"2.  Damages. The jury or the court, if the proceeding be tried without a jury, shall also assess the damages occasioned to the plaintiff by any forcible entry, or by any forcible or unlawful detainer, and any amount found due the plaintiff by reason of waste of the premises by the defendant during the tenancy, alleged in the complaint and proved on the trial, and find the amount of any rent due, if the alleged unlawful detainer be after default in the payment of rent; and the judgment shall be rendered against the defendant guilty of the forcible entry, or forcible or unlawful detainer, for the rent and for three times the amount of the damages thus assessed. * * *"

[5]This finding was as follows:

"9.  That § (k) of the lease agreement between Scotti and Defendant reads in pertinent part:

'[Defendant] may not assign or sublet the lease premises without written consent of Scotti.'

That Flamingo Pools did occupy the premises while performing according to a construction contract with Defendant. That Flamingo Pools was paid by Defendant for work done. That Defendant received no rent from Flamingo. That there is no sufficient evidence of an assignment by Defendant to Flamingo Pools."

(Cal.App. 1949). Hence, we will consider the merits of this assignment of error.

An "assignment" has been defined as: "A transfer or making over to another of the whole of any property, real or personal, in possession or in action, or of any estate or right therein." Black's Law Dictionary, p. 153 (4th Ed. 1957). A "sublease" has been defined: "One [a lease] executed by the lessee of an estate to a third person, conveying the same estate for a shorter term than that for which the lessee holds it." Black's Law Dictionary, p. 1036 (4th Ed. 1957). As usually understood, both terms comprehend some transfer of interest. Appellant has cited no authority to establish that, as used in the lease's proscriptions, either term was intended to prohibit respondent from using the premises in the manner recited in the lower court's finding, which is supported by the evidence. Thus, this assignment of error is without merit.

3. NRS 40.250(4), quoted above, also governs notices when the tenant has set up or carried on an "unlawful business," or permitted or maintained a "nuisance." Apparently believing he has invoked the lower court's jurisdiction under this provision of our law, appellant contends that "[t]he court erred in failing to find and rule on the issue of violation of the county ordinances by respondent, as presented by the complaint of appellant."

If the court erred in not ruling on the issue, we deem the error harmless. NRCP 61. Appellant having cited no authority to support his position, we are unwilling to hold that engaging in an intrinsically lawful business, in a building not yet fully completed in accordance with Clark County's building code, constitutes an "unlawful business" or "nuisance" within the meaning of NRS 40.250(4). Authorities collected at pages 469 and 471 of 100 A.L.R.2d, to which appellant cited the trial court,[6] do not support him. Indeed, to a limited degree, some would appear to support respondent.

4. Under NRS 40.250(5), a tenant is guilty of an unlawful detainer "[w]hen he continues in possession, in person or by subtenant, after a neglect or failure to perform any condition or covenant of the lease or agreement . . . other than those

---

[6]"In the absence of lease provisions or statute, illegal use of the property does not work a forfeiture of the lease.

"A statute authorizing that the lease shall be void for illegal use of the premises does not render the lease void, unless the lessor elects

hereinbefore mentioned, and after notice in writing, requiring in the alternative the performance of such condition or covenant or the surrender of the property . . . shall remain uncomplied with for 5 days." The statute goes on to recite: "Within 3 days after the service, the tenant . . . may perform such condition or covenant and thereby save the lease from forfeiture; but if the covenants and conditions of the lease, violated by the lessee, cannot afterwards be performed, then no notice as last prescribed herein need be given."

Apparently believing that an alternative notice was not required, because requisite performance could no longer be made, appellant contends that "[t]he court erred in failing to find that numerous liens and judgments had been filed against respondents, and their effect, and failed to rule on whether certain documents offered into evidence on liens and judgments were admissible."[7] In a related argument, appellant contends the court erred "in concluding that the default judgments against respondent did not breach the lease." In our view, if a lessee has agreed to keep demised premises "free and harmless of and from all liability on account of or in respect to any mechanics' lien or liens," and liens are established in some fashion the landlord believes violates this covenant, then as a predicate to seeking forfeiture, the landlord must serve the alternative notice required by NRS 40.250(5). Cf. Feder v. Wreden Packing & Provision Co., 265 P. 386 (Cal.App. 1928).[8] Thus, again, error may not be predicated upon the lower court's supposed misunderstanding of paragraph (i), because the court was without jurisdiction in the premises.

---

to avoid such lease, otherwise the tenant may get rid of a burdensome lease by his own wrongful act.

"32 Am Jur p. 731, § 864

"What is illegal is a judicial determination under a statute on illegal use.

"100 ALR2d 469

"The illegal use must be of a continuing nature and includes code regulations.

"100 ALR2d 471
100 ALR2d 469"

[7] Indeed, appellant seems to suggest that no notice whatever is required, when a breach cannot be corrected. This is a questionable interpretation of NRS 40.250(5). See: Schnittger v. Rose, 73 P. 449 (Cal. 1903); Horton-Howard v. Payton, 186 P. 167 (Cal.App. 1919).

[8] If it be contended that respondent's alleged violations of Clark County's building code are within the ambit of NRS 40.250(5), we would view them in the same light.

5. Apparently believing he has invoked the lower court's jurisdiction under NRS 40.250(5), appellant contends that "[t]he court was in error as to its findings on the $5,000.00 owing to appellant as and for the final payment on the house destroyed by respondent and covered by the lease under section 'h' and a judgment for said sum should have been entered thereon."

Subsequent to execution of the lease, appellant's predecessors agreed in writing to take payment under different terms than those stated in the lease, and to permit respondent to remove the existing house from the premises.[9] It is therefore doubtful that any issue relating to the house could properly be litigated in an action for unlawful detainer. See: Little v. Catania, 297 P.2d 255 (Wash. 1956). In any event, the obligation, concerning merely the payment of money, could have been performed; thus, the lower court had no jurisdiction of the dispute in the absence of an alternative notice.

6. Apparently believing he has invoked the lower court's jurisdiction under 40.250(5), appellant further contends that "[t]he Court's interpretation of Section 'l' of the Lease is in error." (The lower court construed paragraph (1) to apply only "when the action filed relates to the leased property itself.") Again, our first concern is whether the covenant in question could still be performed. We have decided it could be because, for all practical purposes, the levy of a writ of attachment or execution may be removed at any time, whenever the landlord chooses to demand this be done. Thus, again, in the absence of an alternative demand, the lower court had no jurisdiction in the premises.

---

[9]"AGREEMENT

"This agreement made this 26 day of October 1968.

"We agree to take $2,500.00 cash down payment on the one bedroom house on property leased to Jet Craft, Ltd., 241 Reno Avenue, Las Vegas, Nevada.

"Enclosed is $2,500.00 check, dated October 26, 1968; $2,500.00 check, dated December 15, 1968; $5,000.00 check, dated March 1, 1969 and hereby grant Jet Craft Ltd. permission to remove said house from the plant property.

Signed Joseph J. Scotti

Guy C. Scotti

Witness Doris Y. Grose."

7.   Appellant apparently contends he was "forced" to purchase respondent's interests at execution sale; that, by suffering appellant to purchase its interests subject to redemption under NRS 21.190, respondent in effect "assigned" or "sublet" the premises to appellant, without appellant's consent; and that, therefore, all respondent's rights were forfeited. We reject this argument.

Because the record establishes no unlawful detainer, we need not consider contentions concerning claims incident to the main object of the action, or contentions regarding the lower court's determination that forfeiture would be inequitable.

The judgment is affirmed.

ZENOFF, C. J., BATJER, MOWBRAY, and THOMPSON, JJ., concur.