**Patricia OSNESS, Appellant and Cross-Appellee,**

v.

**DIMOND ESTATES, INC., Appellee and Cross-Appellant.**

Nos. 4192, 4193.

Supreme Court of Alaska.

Aug. 15, 1980.

Timothy H. Stearns, Legal Clinic of Timothy H. Stearns, Anchorage, for appellant and cross-appellee.

Terry L. Johnson, Groh, Eggers, Robinson, Price & Johnson, Anchorage, for appellee and cross-appellant.

Before RABINOWITZ, C. J., and CONNOR, BOOCHEVER,* BURKE and MATTHEWS, JJ.

* This case was submitted to the court for decision prior to Justice Boochever's resignation.

## OPINION

RABINOWITZ, Chief Justice.

This case concerns a forcible entry and detainer action brought pursuant to AS 09.-45.060—.160 and Alaska Rule of Civil Procedure 85 to evict a mobile home owner from a trailer park space occupied on a month-to-month tenancy.

On April 8, 1976, Mrs. Osness and her three children moved into a mobile home she was purchasing located in Dimond Estates Mobile Home Park. A rental agreement was signed. On December 14, 1977, Dimond Estates served her with a Notice of Default and Notice to Quit [hereinafter referred to as Notice] pursuant to AS 34.03.-220(a) and AS 34.03.225(3) which alleged numerous violations of the rental agreement:

> Failure to Supervise children; Local Hangout for kids Resulted in a Gun Fired thru Trailer at Space 612. Failure to Maintain yard. Garbage dump. Generally unsanitary. Failure to keep dog confined. Turns Dog out on Regular Basis. Has distributed Garbage over several trailers. Failure to keep Motorcycles and Snow Machines off streets and Lawn Area.

The Notice demanded cure within ten days or possession within twenty days.

On January 16, 1978, Dimond Estates filed a complaint in district court for forcible entry and detainer which alleged rental agreement violations similar to those contained in the Notice. After trial, eviction was ordered. The district court found that Osness had remedied all violations with two exceptions: her dog had not been adequately restrained, and she kept a junk car in her parking space.

Osness appealed and Dimond Estates cross-appealed to the superior court, asserting that irrespective of the junk car and failure to restrain the dog, other incidents involving the failure of Mrs. Osness to supervise her children were irremediable violations of the rental agreement which justified eviction. The superior court affirmed the judgment of the district court, and subsequently execution was stayed pending this appeal. We affirm the judgment of the superior court.

██ The Uniform Residential Landlord and Tenant Act, AS 34.03, applies to this case. In *McCall v. Fickes*, 556 P.2d 535, 539 (Alaska 1976), we held that the general rule with regard to termination of month-to-month tenancies that a landlord may terminate without cause on thirty days written notice was not changed by the Uniform Act. A subsequent amendment to the Act, AS 34.03.225, does change this rule with respect to mobile homeowners.

AS 34.03.225 limits a landlord's right to evict a mobile home tenant to only four reasons.[1] Several other states have similar laws, the rationale of which has received considerable attention. Such legislation provides mobile homeowners with a measure of protection in their dealings with mobile home park operators.[2] Mobile homeowners are thought to need more protection than do ordinary renters because the general shortage of mobile home spaces[3] places

---

1. AS 34.03.225 provides:

 *Limitations on mobile home park operator's right to terminate.* A mobile home park operator may evict a mobile home or a mobile home park dweller or tenant only for one of the following reasons:

 (1) the mobile home dweller or tenant has defaulted in the payment of rent owed;

 (2) the mobile home dweller or tenant has been convicted of violating a federal or state law or local ordinance, and that violation is continuing and is detrimental to the health, safety or welfare of other dwellers or tenants in the mobile home park;

 (3) the mobile home dweller or tenant has violated a reasonable rule or regulation properly established by the operator; and

 (4) a change in the use of the land comprising the mobile home park, or the portion of it on which the mobile home to be evicted is located; however, all dwellers or tenants so affected by a change in land use shall be given at least 90 days notice, or longer if a longer notice period is provided in a valid lease.

2. *Palm Beach Mobile Homes, Inc. v. Strong,* 300 So.2d 881, 886 (Fla. 1974).

3. *See generally Stewart v. Green,* 300 So.2d 889, 891 (Fla. 1974); Kulkin, *Housing Technol-*

them in an unequal bargaining position[4] which can lead to abuses by the landlord,[5] and because eviction entails the expense of moving a mobile home[6] which could result in a loss of equity in the mobile home.[7]

■ Evictions permitted by AS 34.03.-225(3) should therefore be limited to situations involving a substantial violation, inuring to the harm of other tenants, of a properly established and reasonable park rule or regulation.[8] AS 34.03.220(a) sets out the proper procedure to be followed in an eviction under AS 34.03.225(3).[9] It expressly requires material noncompliance.

■ Under this approach, we conclude that the problems with the Osness dog were not sufficiently material to warrant evic-

tion. After Notice was given, only one incident, involving the dog scratching a neighbor's door but doing no real damage, occurred. The dog was immediately put on a shorter chain to prevent a recurrence and has since been given away.

■ Likewise, the fact that for several months the Osness car remained parked and inoperable in the space assigned to her would not support an eviction, given her testimony that the car's value exceeded the cost to repair it and that it could not be repaired until parts she had ordered arrived. The rental agreement stated only that "[j]unk cars as determined by the management are prohibited." Normally, a junk car is one which cannot be economically repaired.[10] Any contrary, special meaning

---

ogy: *The Mobile Home Experience,* 44 Tenn.L. Rev. 765, 805–06 (1977); Note, *The Community and The Park Owner Versus The Mobile Home Park Resident: Reforming The Landlord-Tenant Relationship,* 52 B.U.L.Rev. 811, 812 (1972); Note, *Mobile Home Practices: The legal Relationship Between Mobile Home Park Owners and Tenants Who Own Mobile Homes,* 3 Fla.St. U.L.Rev. 103, 110 (1975).

**4.** *See generally* Note, *Mobile Homes Practices, supra* note 3, at 104; Note, *The Necessity for Specific State Legislation to Deal With The Mobile Home Park Landlord-Tenant Relationship,* 9 Ga.L.Rev. 212, 221 (1974).

**5.** *See generally* Note, *The Community and The Park Owner Versus the Mobile Home Park Resident, supra* note 3.

**6.** *See generally Palm Beach Mobile Homes, Inc. v. Strong,* 300 So.2d 881, 886 (Fla. 1974); *Mobile Home Practices, supra* note 3, at 120; Note, *Mobile Homes: Present Regulation and Needed Reforms,* 27 Stan.L.Rev. 159, 166–67 (1974); Kulkin, *Housing Technology: The Mobile ·Home Experience, supra* note 3, at 784.

**7.** *See generally* Note, *Mobile Homes: Present Regulation and Needed Reforms, supra* note 6, at 166–67.

**8.** The Senate Commerce Committee report on AS 34.03.225(3) reveals the limited application of that subsection:

In Section 34.03.225, the bill allows a mobile home or mobile home tenant to be evicted if, *among other listed reasons,* the tenant has violated a reasonable rule or regulation properly established by the landlord.

It is the intent of this provision to allow eviction only in accordance with existing legal procedure and only where the violation is

injuring other dwellers or tenants in the mobile home park. Mere technical or minor violations of rules or violations which are not hurting anyone should not be grounds for eviction.

1976 Senate Journal 1368.

**9.** AS 34.03.220(a) provides:

Except as provided in this chapter, if there is a material noncompliance by the tenant with the rental agreement or noncompliance with § 120 of this chapter materially affecting health and safety, the landlord *may deliver a written notice to the tenant specifying the acts and omissions constituting the breach and specifying that the rental agreement will terminate upon a date not less than 20 days after receipt of the notice. If the breach is not remedied in 10 days, the rental agreement terminates as provided in the notice subject to the provisions of this section. If the breach is remediable by repairs or the payment of damages or otherwise and the tenant adequately remedies the breach before the date specified in the notice, the rental agreement will not terminate.* In the absence of due care by the tenant, if substantially the same act or omission which constituted a prior noncompliance of which notice was given recurs within six months, the landlord may terminate the rental agreement upon at least 10 days written notice specifying the breach and the date of termination of the rental agreement. [emphasis added]

**10.** *See, e.g., City of Watseka v. Blatt,* 320 Ill. App. 191, 50 N.E.2d 589, 594 (1943) ("Junk, as the term is ordinarily understood, means articles that have outlived their usefulness. . . ."). *Cf.* Anchorage Municipal Code § 15.20.010E which provides:

had never been included in any park rules, nor communicated in any way to Mrs. Osness, and therefore cannot be regarded as a part of a "properly established" rule under AS 34.03.225(3).[11]

■ We agree with Dimond Estates, however, that the district court erred in finding that, with the exception of the violations relating to the dog and car, Osness had complied with all requirements and conditions imposed upon it by law, and by the rental agreement." Under AS 34.03.-220(a), a landlord is not prohibited from evicting a tenant for a violation of the rental agreement if it is both material and not "remediable by repairs or the payment of damages or otherwise."[12] In our opinion, two violations of the rental agreement involving the Osness children are of this character.

■ The rental agreement entered into by Mrs. Osness contains regulations which clearly hold tenants responsible for the conduct of their children and guests, and which prohibit unnecessary disturbances.[13] The evidence in this case is undisputed that a guest of the Osness children accidentally discharged a rifle in the Osness trailer, resulting in a bullet passing through the trailer next door which was occupied by a mother and her young child. In another incident, it is undisputed that property stolen from other park tenants was discovered by the police in the Osness trailer after being brought there by a friend of Mrs. Osness' teenage son.

Both these incidents directly and seriously threatened the safety either of persons or of property in the trailer park. Such occurrences disturb the peace and harmony of a neighborhood to a degree and in a manner that we believe is "material," and not "remediable" under the language of AS 34.03.-220(a). Return of the property stolen and repair of the physical damage caused by the bullet cannot alleviate the serious distrust and fear which at least some neighbors must continue to harbor as a result of these incidents. Mrs. Osness testified to steps she had subsequently taken to more closely monitor her children. But no reassurances by Mrs. Osness, payment of money, or other plausible attempts at restitution can remove the insecurity and ill-will which such events spawn. No incidents of this nature recurred in the brief time between service of Notice and trial. However, this fact is of little consequence when instances of conduct which seriously threaten the health

---

"Junk vehicle" means a motor vehicle that is (1) not currently registered for operation upon the public roads of the municipality, (2) stripped, wrecked or otherwise inoperable due to mechanical failure and (3) has not been repaired because of mechanical difficulties or because the cost of repairs required to make it operable exceeds the fair market value of the vehicle.

11. The same result is dictated by another section of the Uniform Act, AS 34.03.130, which provides in relevant part:

*Rules and Regulations.* (a) A landlord may adopt rules and regulations, which shall be posted prominently on the premises, concerning the tenant's use and occupancy of the premises. A rule or regulation is enforceable against the tenant only if

(4) it is sufficiently explicit in its prohibition, direction, or limitation of the tenant's conduct to fairly inform him of what he must or must not do to comply; . . ..

12. *See* note 10 *supra.*

13. The Dimond Estates rental agreement entered into by Mrs. Osness provides in pertinent part:

5. Children of tenants or guests will not play in streets, but will play in areas provided for them. Parents will be held responsible for any damage that children do to grounds or play areas. Dimond Estates Inc. is not responsible for children getting hurt at the play ground area.

7. Host tenants are responsible for the conduct of their guests, and for the acts of guests' children; and such children must be under direct supervision at all times. . .

25. Dimond Estates will not allow unnecessary disturbances. Each resident must exercise normal courtesy in the use of record players, radio, television and loud talking. Outside bells, loud speakers, spot lights, etc., are not permitted. BB guns, pellet guns, slingshots, bow and arrows and fireworks are prohibited.

and safety of others, who must live in extremely close proximity to the offending party, have left their indelible imprint on the atmosphere of the neighborhood.

 We normally will not reverse a trial court's factual finding unless it is clearly erroneous. Alaska Rule of Civil Procedure 52(a). However, since the facts relating to the incidents discussed are not in dispute, determination of whether these violations of the park rules were material and without remedy under AS 34.03.220(a) is basically a question of legal analysis. Further, we may review a trial judge's application of legal doctrine to the uncontroverted facts of a case without the deference associated with review of factual findings themselves. *Peters v. Juneau-Douglas Girl Scout Council*, 519 P.2d 826, 833–34 (Alaska 1974). We believe that the district court erred in its legal conclusions regarding the gunshot and stolen property incidents in this case.[14] Thus, we conclude that the district court's judgment of eviction is sustainable on these two incidents.

The judgment of the superior court affirming the district court's order of eviction is Affirmed.

MATTHEWS, Justice, dissenting.

While I agree with the majority that the incidents pertaining to the dog and the car do not justify eviction, I disagree with the majority's rejection of the trial court's finding that appellant had otherwise "complied with all requirements and conditions imposed upon it by law and the rental agreement." The majority, unlike the trial court, concludes that two incidents involving failure to supervise children justify appellant's eviction. A discussion of those incidents is in order.

On November 17, 1977, when Mrs. Osness was not home, a twenty-two caliber rifle went off in her trailer. The bullet went through the front door and broke a window in a neighbor's trailer. Fortunately, no one was injured. The rifle was brought to Mrs. Osness' trailer by a friend of her children. It is undisputed that the rifle discharged accidentally. The rifle and person who brought it were removed from the trailer park by an investigating state trooper. There is no evidence or allegation that Mrs. Osness' children normally play with or have access to guns.

On November 23, 1977, an Alaska state trooper searched the Osness trailer and found a number of stolen items, some of which were claimed by park tenants, including a wristwatch and television set. Mrs. Osness testified that much of the property was hidden in a manner that prevented her discovering it. She testified that a television set, the stolen property in plain view, was loaned to her by a teenage friend of her older son who claimed that his family owned it. She testified that since her discovery of the stolen property she had made efforts to keep her children away from others who might be a bad influence on them.

Some violations under AS 34.03.220(a) are not remediable, especially where there is a significant impact on health and safety. This case presents a close question as to whether Mrs. Osness' failure to supervise her children is a remediable violation. To some extent the impact of the accidental gun shot and discovery of stolen property is irremediable, since Osness' neighbors will always harbor a degree of apprehension that similar incidents will recur. On the other hand, Mrs. Osness testified that she has taken steps to more closely monitor her children and assure that there will be no similar events in the future. None had occurred in the time between the eviction notice and the trial.

The trial court's conclusion that the incidents arising out of Mrs. Osness' failure to supervise her children do not justify evic-

---

**14.** We do not reach a similar conclusion regarding Dimond Estates' allegations that the Osness children had frequent, loud parties and often engaged in other conduct bothersome to other tenants. There was testimony from other park tenants who live in close proximity to the Osness trailer both supportive of and in conflict with these contentions. Mrs. Osness asserted that Dimond Estates did not inform her of any such complaints until she was served with Notice. There is no evidence of such conduct continuing after service of the Notice.

tion is basically factual. This court does not ordinarily reverse a factual determination unless it is clearly erroneous. Alaska Rule of Civil Procedure 52(a). Such an error is said to exist where we have a definite and firm conviction that a mistake has been made.[1] My examination of the record in this case has not left me with such a conviction.

---

1. *See, e.g., Steward v. City of Anchorage,* 391 P.2d 730, 731 (Alaska 1964).