Richard TAYLOR, Appellant,

v.

GILL STREET
INVESTMENTS, Appellee.

No. S–1203.

Supreme Court of Alaska.

Oct. 2, 1987.

---

Richard Taylor, pro se.

Peter F. Mysing, Kenai, for appellee.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

RABINOWITZ, Chief Justice.

### I. BACKGROUND.

Gill Street Investments ("Gill Street") owns a Kenai low-income housing complex called the Gill Street Apartments. Richard Taylor resided there from December 1984 until he was evicted on July 12, 1985.

Taylor was personally served with a notice of termination of tenancy on June 4, 1985. The notice stated that Taylor had breached the rental agreement because he did not keep his apartment in a clean and safe condition, he did not properly dispose of garbage, and he unreasonably disturbed his neighbors' peaceful enjoyment of the premises. The notice directed him to vacate his apartment on or before June 14, ten days after his receipt of the notice.

Taylor did not move by June 14, and Gill Street filed a complaint for forcible entry and detainer on June 19. On June 28, the parties appeared at a hearing, but the case was not tried that day due to scheduling problems of the superior court and Taylor's attorney. Those problems caused the attorney to withdraw from the case, which was then continued until July 2 to allow Taylor time to obtain substitute counsel.[1]

Taylor appeared without counsel at the July 2 hearing. He asked the court for a continuance until his attorney returned from vacation. The court granted a one-day continuance on the condition that Taylor pay a $300 sanction to cover the expenses incurred by Gill Street in preparing for the aborted hearing.

On July 3, Taylor again appeared without counsel. The court proceeded to try the case. Gill Street presented testimonial evidence that Taylor's apartment badly needed cleaning and exuded a very bad odor. Taylor essentially admitted that he left his drapes open when he walked around his apartment (which is near the children's

1. On June 28, a Gill Street representative delivered to Taylor a 24–hour advance notice of inspection. The apartment was inspected the following evening, a Saturday, at 8:30 p.m. Taylor was not at home.

play area) in the nude. There was evidence that Taylor refused to move his car to permit parking lot snow removal when requested to do so, and that he would sit in the parking lot blowing his horn for an extended period of time if his parking place was occupied. Several witnesses testified that Taylor was frequently seen intoxicated, and that they had observed him driving in this condition. One tenant specifically testified that he was concerned about his children's safety due to Taylor's driving while intoxicated, and another testified that he had seen Taylor hit a parked car while intoxicated. Another tenant recounted an incident in which a drunk guest of Taylor frightened her by walking into her apartment uninvited and yelling at her children because they were making too much noise.

Based on its findings of fact and conclusions of law, the court entered a writ of eviction ordering Taylor to leave the premises by July 12. This appeal followed.

## II. DISCUSSION.

### A. *Did the Notice of Termination of Tenancy Meet the Time Requirements of AS 34.03.220(a)?*

Gill Street argues that Taylor's appeal is moot because he vacated the premises in accordance with the writ of eviction entered by the superior court. Taylor counters that the appeal falls within the public interest exception to the mootness doctrine.

Ordinarily we will not decide questions of law where the facts render the legal issues moot. However, we will consider a moot issue if it falls within the public interest

exception to the mootness doctrine. The three factors in determining whether the public interest exception applies are (1) whether the disputed issues are capable of repetition, (2) whether application of the mootness doctrine will repeatedly circumvent review of the issues, and (3) whether the issues are of important public interest. *Hayes v. Charney*, 693 P.2d 831, 834 (Alaska 1985). Ultimately, the determination whether to address an issue which is technically moot rests in the discretion of this court. *Id.; Witt v. Watkins*, 579 P.2d 1065, 1071 n. 19 (Alaska 1978).

■ In our view this appeal is technically moot because Taylor has already vacated the premises in question. Furthermore, Taylor waived his right to claim damages for Gill Street's alleged abuse of access in inspecting his apartment by failing to assert it below. *See Hill v. Ames*, 606 P.2d 388, 390 (Alaska 1980); *Brown v. Wood*, 575 P.2d 760, 766 (Alaska 1978), *modified*, 592 P.2d 1250 (Alaska 1979). Nevertheless, we agree with Taylor that the issue of whether a landlord must strictly comply with the notice-time provision of AS 34.03.-220(a) [2] falls within the public interest exception to the mootness doctrine.[3]

On the merits, Taylor argues that Gill Street's complaint was invalid because the notice of termination of tenancy was defective. The notice Taylor received specified that the tenancy would terminate in ten days rather than the twenty days allotted by AS 34.03.220(a). Had the notice complied with the statute, Taylor would have had until June 14 to remedy the breaches

---

**2.** AS 34.03.220(a) provides in relevant part:

[I]f there is a material noncompliance by the tenant with the rental agreement or noncompliance with AS 34.03.120 materially affecting health and safety, the landlord may deliver a written notice to the tenant specifying the acts and omissions constituting the breach and specifying that the rental agreement will terminate upon a date not less than 20 days after receipt of the notice. If the breach is not remedied in 10 days, the rental agreement terminates as provided in the notice subject to the provisions of this section. If the breach is remediable by repairs or the payment of damages or otherwise and the tenant adequately remedies the breach before the date specified in the notice, the rental agreement will not terminate.

**3.** The relevant factors delineated in *Hayes*, 693 P.2d at 834, have been met with respect to this issue. First, the issue is obviously capable of repetition, although it is unlikely to recur between these parties. Second, application of the mootness doctrine may repeatedly frustrate review, because tenants will often comply with a writ of eviction based on inadequate notice, as did Taylor. Third, we view the notice of termination question as one of important public interest.

Having decided to address the merits of this issue as an exception to the mootness doctrine, we will also consider Taylor's additional specifications of error.

and until June 24 to vacate. The trial court concluded that the defect was immaterial because Taylor was still occupying the premises on June 28 when an inspection revealed that Taylor had not remedied the breaches. Gill Street concedes that the notice was technically defective but contends that the case was nevertheless properly tried.

Under AS 34.03.220(a), if a tenant materially breaches the rental agreement or AS 34.03.120,[4] the landlord may deliver notice to the tenant detailing the breach and terminating the tenancy on a specific date not less than twenty days from delivery of the notice. *See supra* note 2. The tenancy terminates on the date specified in the notice unless the tenant remedies the breach in ten days. *Id.* If, however, the breach is not "remediable by repairs or the payment of damages or otherwise," the landlord is not prohibited by the state from evicting the tenant. *Osness v. Dimond Estates, Inc.*, 615 P.2d 605, 609 (Alaska 1980).

■ In our view several violations of the rental agreement specified in the notice of termination were of this irremediable character. This leads us to conclude that the deficiency in the notice was immaterial because Taylor could not have remedied those breaches had notice been proper.[5]

The notice served on Taylor stated in part that he had breached the provisions of his rental agreement which required him, "[n]ot [to] permit a nuisance" and to "[c]onduct [himself] ... and require other persons on the premises with [his] consent to conduct themselves in a manner that will not unreasonably disturb a neighbor's peaceful enjoyment of the premises." It

separately stated that he had violated the condition that "[t]enants must conduct themselves in a manner that does[ ]not unreasonably disturb their neighbors' peaceful enjoyment of the premises." Taylor has contradicted the evidence presented by Gill Street, detailed at the outset of this opinion, which indicates that he has indeed unreasonably disturbed his neighbors' enjoyment of the premises. Taylor's behavior—specifically his unnecessary creation of excessive noise, his failure to prevent an intoxicated guest from frightening and intruding upon the privacy of other tenants, his displays of nudity, and his unsafe driving habits—cannot alleviate the annoyance and fear which his neighbors have suffered and undoubtedly continue to suffer even if similarly threatening and offensive incidents have not recurred. *See Osness*, 615 P.2d at 609.

In our view, the instances of conduct by Taylor recounted by Gill Street's witnesses reflect violations of the rental agreement which "have left their indelible imprint on the atmosphere of the neighborhood," *id.* at 610, and Taylor could not have made satisfactory restitution for them regardless of the period of time specified in the notice of termination. Consequently, the landlord's failure to comply with the statutory notice-time requirements offers Taylor no avenue of redress.

### B. *Did the Superior Court Abuse Its Discretion in Denying Taylor the Requested Continuance?*

Taylor argues that the trial court abused its discretion by failing to grant a continuance until his attorney returned from vaca-

---

**4.** AS 34.03.120 sets forth the tenant's obligations with respect to maintenance of the premises.

**5.** This holding renders it unnecessary for us to decide whether a landlord must strictly comply with statutory notice provisions. However, we note our agreement with those courts which have ruled that strict compliance is a jurisdictional prerequisite to a summary dispossession proceeding, such that a notice which fails to specify the breach or inform the tenant of his right to cure voids a subsequent action. *See Goodin v. King*, 192 Kan. 304, 387 P.2d 206, 208–09 (1963); *Gasser v. Jet Craft Ltd.*, 87 Nev. 376, 487 P.2d 346, 348 (1971); *cf. Sovereen v. Meadows*, 595 P.2d 852, 854 & n. 3 (Utah 1979)

(defective notice results in failure to state claim rather than lack of subject matter jurisdiction); *Little v. Catania*, 48 Wash.2d 890, 297 P.2d 255, 256 (1956) (failure to plead and prove notice, which is condition precedent to unlawful detainer action, renders judgment erroneous). Thus, if the breaches committed by Taylor had been remediable, we would consider the landlord's failure to strictly comply with the notice-time requirements of AS 34.03.220(a) to render this action void. Such a construction is warranted in light of both the fact that the landlord obtains the advantage of a summary proceeding and the severity of the consequences that an adverse judgment carries for the tenant.

tion. Gill Street contends that the court acted within its discretion.

The forcible entry and detainer cause of action is a creature of statute designed "to preserve the peace by providing a speedy method to resolve disputes over the possession of real property." *McDowell v. Lenarduzzi*, 546 P.2d 1315, 1317–18 (Alaska 1976) (footnote omitted). The court may not grant a continuance longer than two days, Alaska R.Civ.P. 85(a)(3),[6] or in the absence of a showing of good cause.[7] The date set for trial is ordinarily within fifteen days of the filing of the complaint. *See* Alaska R.Civ.P. 85(a)(2).

The decision whether to grant a continuance ultimately rests in the discretion of the trial court. *Barrett v. Gagnon*, 516 P.2d 1202, 1203 (Alaska 1973). That discretion is abused if a party is deprived of a substantial right or is severely prejudiced because of the refusal to grant a continuance. *Id.* A party is not automatically entitled to a continuance when counsel withdraws, especially if the party is not free from fault or does not use due diligence to obtain substitute counsel. *Id.* Absent unusual circumstances, we will not substitute our judgment for that of the trial court in determinations involving diligence of parties or counsel. *Adams v. Cowan*, 360 P.2d 1013, 1014 (Alaska 1961).

■ Here the superior court twice continued the trial of this case to allow Taylor to obtain substitute counsel. The court specifically informed Taylor that no further continuances would be granted and that he would have to represent himself if he did not appear with an attorney on July 3. Although the court made no express finding as to whether Taylor attempted with due diligence to obtain substitute counsel, it did inquire about his attempts to do so. From the transcript of the proceedings we infer that the court concluded that Taylor had had an adequate opportunity to hire another lawyer but simply failed to do so. Trial was ultimately held on the fourteenth day following the filing of the complaint.

Consideration of the foregoing circumstances leads us to conclude that the superior court did not abuse its discretion in denying Taylor's request for an additional continuance.

C. *Did the Notice of Termination of Tenancy Adequately Specify Taylor's Alleged Breaches of the Rental Agreement Under AS 34.03.220(a)?*

■ Under Alaska's version of the Uniform Residential Landlord and Tenant Act, AS 34.03.010—.380, the written notice of termination of tenancy must specify "the acts and omissions constituting the breach."[8] The notice served on Taylor stated in part that he violated paragraphs 10(a), (c), and (d) of the parties' rental agreement.[9] The written notice further stated that Taylor allegedly violated the following conditions:

A. Dwelling must be kept in clean, safe condition.

B. Tenant must dispose of garbage and other waist [sic].

---

6. Civil Rule 85(a)(3) provides in part:

(a) *Practice and Procedure.* In an action ... brought under the forcible entry and detainer provisions of law, the practice and procedure shall be as in other civil actions, subject to the following:

....

(3) *Continuances.* No continuance shall be granted for a longer period than 2 days, unless the defendant applying therefor shall give an undertaking to the adverse party, with sureties approved by the court, conditioned to the payment of the rent that may accrue if judgment is rendered against defendant.

7. AS 34.03.285 provides:

*Service of process upon tenant.* In an action for possession under this chapter, the summons and complaint shall be served under the provisions of Rule No. 85 of the Rules of Civil Procedure. A continuance may not be granted plaintiff or defendant except for good cause shown.

8. *See* AS 34.03.220(a), *supra* note 2.

9. Under the agreement Taylor had the following obligations: Paragraph 10(a) required him to "[k]eep the premises in clean and sanitary condition and promptly dispose of all rubbish, garbage, and waste at reasonable and regular periods." Subsections (c) and (d) were the provisions discussed above in part II. A. which obligated Taylor "[n]ot [to] permit a nuisance," and to "[c]onduct [himself] ... and require other persons on the premises with [his] consent to conduct themselves in a manner that will not unreasonably disturb a neighbor's peaceful enjoyment of the premises."

C. Tenants must conduct themselves in a manner that does[ ]not unreasonably disturb their neighbors' peaceful enjoyment of the premises.

Tenant became abusive and loud to manager when manager visited tenant to install screens on tenant[']s windows. Tenant was drunk and abusive on this and other occasions. Tenant does[ ]not keep premises in a clean and neat manner thus contributing to unsanitary conditions. Tenant shows continuous annomisity [sic] toward manager when ever [sic] he is asked to move auto for cleaning purposes and snow removal.

Review of the notice of termination of tenancy persuades us that the notice adequately detailed the acts and omissions constituting Taylor's alleged breaches of the rental agreement. We therefore hold that the notice in this respect was sufficient for purposes of AS 34.03.220(a).

D. *Did Gill Street Abuse its Right of Access in Inspecting Taylor's Apartment?*

█ Taylor argues that Gill Street abused its right of access by inspecting his apartment in his absence at 8:30 in the evening. AS 34.03.140(c) provides in relevant part that "... the landlord shall give the tenant at least 24 hours notice of intention to enter and may enter only at reasonable times and with the tenant's consent." AS 34.03.140(a) states that "[t]he tenant may not unreasonably withhold consent to the landlord to enter into the dwelling unit in order to inspect the premises...." The notice of inspection which was personally served on Taylor on June 28 advised that

a physical inspection of your apartment will be made by the manager and the owner's representative during the evening of Saturday, June 29, 1985. The purpose of the inspection will be to check for health and safety problems that may present a hazard to the building and other tenants. If you are not present the owner's representative will use a pass key to gain entry. You are advised to be present for the inspection.

The superior court concluded that the notice of inspection was proper. We hold that the superior court did not err on this point since the notice of inspection complied with AS 34.03.140(c).[10]

AFFIRMED.

---

10. Taylor argues for the first time on appeal that the inspection was conducted without his consent. We will not consider this contention since it was not raised below. *See Brown v. Wood,* 575 P.2d 760, 766 (Alaska 1978), *modified,* 592 P.2d 1250 (Alaska 1979). As Gill Street points out, Taylor's claim for invasion of privacy and his request to this Court for an award of damages was never presented to the superior court. Additionally, Gill Street argues that no evidence was introduced that Taylor objected to the inspection and that during his sworn testimony Taylor "never indicated his lack of consent to ... [the] inspection of his apartment on June 29, 1985."

If a landlord makes an unlawful entry, or a lawful entry in an unreasonable manner, the tenant may recover an amount not to exceed the actual damages or one month's periodic rent, whichever is greater, court costs and reasonable attorney's fees. AS 34.03.300(b). As previously noted, Taylor never requested damages below, but did so for the first time in his brief on appeal. Therefore, even if Gill Street did act unreasonably, Taylor has thus waived his claim for damages. *See Hill v. Ames,* 606 P.2d 388, 390 (Alaska 1980); *Brown,* 575 P.2d at 766.