531 So.2d 731 (1988)
James M. BROWN, Jr., and Bianca Brown, Appellants,
v.
Jack POWELL, et al., Appellees.
James M. Brown, Jr., and Bianca Brown, Appellants/Cross Appellees,
v.
Betty Simmons, Appellee/Cross Appellant, and
Jack Powell, et al., Appellees.
Nos. 87-2216, 87-2477 and 87-2881.
District Court of Appeal of Florida, Fourth District.
September 7, 1988.
Rehearing and Rehearing Denied October 24, 1988.
*732 Larry Klein of Klein & Beranek, P.A., and Alan S. Zangen, West Palm Beach, for appellants/cross appellees.
David E. Horvath of David E. Horvath, P.A., Palm Beach Gardens, for appellee/cross appellant.
Burton G. Sharff of Evans, Sharff & Kamber, P.A., West Palm Beach, for appellees.
David E. Eastman of Parker, Skelding, McVoy & Labasky, Tallahassee, for amicus curiae  The Florida Manufactured Housing Ass'n, Inc.
Rehearing and Rehearing En Banc Denied October 24, 1988.
GUNTHER, Judge.
We reverse the order awarding attorney's fees and the final judgment entered in favor of defendants/appellees. We remand for trial on the issue of whether the plaintiffs/appellants' conduct constituted a waiver of the eviction notices served pursuant to section 723.061, Florida Statutes (1985). We decline to address Betty Simmons' cross appeal on attorney's fees. As to the Trews' cross appeal, we affirm the denial of the Trews' motion for summary judgment.
This action for eviction of the tenants of a mobile home park pursuant to chapter 723, Florida Statutes (1985), was tried before a jury. However, upon renewed motion by appellees, the trial judge granted a directed verdict at the conclusion of appellees' case, but before appellants' rebuttal. The trial court ruled, inter alia, that appellants' notices of eviction were defective under section 723.061, Florida Statutes (1985), because the notices failed to state the specific nature of the projected change of the use of the land comprising the mobile home park; that the notice of eviction was not delivered to all tenants affected thereby, in particular, the plaintiffs' son, Jeffrey M. Brown, as required by section 723.061(1)(d), Florida Statutes (1985); and that as a matter of law, appellants by their letters of June 27, 1986, and August 2, 1986, amended or rescinded the six-month notices of eviction previously delivered to the appellees. Also, in the final judgment, the trial court certified, as a question of great public importance, the following question:
[W]hether Section 723.061(1)(d), Florida Statutes, (1985), requires the owners of a mobile home park, in their notices of eviction, to specify what the nature of the projected change of use of the land will be. .. .
We answer the certified question in the negative and hold that the trial court erred in ruling that the notices of eviction were defective under section 723.061, Florida Statutes (1985). Furthermore, the trial court erred in ruling that the June 27 and August 2, 1986 letters, as a matter of law, amended or rescinded the notices of eviction.
Although lengthy, a recitation of the facts is helpful in understanding this case. *733 Appellants, James and Bianca Brown, are owners of the 30-acre Carefree Cove Club mobile home park located in Hypoluxo along Lake Worth. In February 1985, appellants called a meeting and told the tenants that appellants planned to sell the park and that the tenants had the right of first refusal to purchase the property. Appellants also gave the tenants' association written notice of its right of first refusal. Appellants put up a "For Sale" sign on the property and gave the exclusive right to sell the property to their son Jeffrey M. Brown, who was a realtor. By December 1985, there were no viable offers to purchase the park by either the tenants or third parties. Appellants were still willing to sell the park to the tenants in early 1986, but the association's offers were rejected as too low by appellants. On May 8, 1986, appellants presented a lease purchase option to John Hilley, attorney for the tenants' association. Appellants were willing to lease the property to the tenants' association for five years during which the association would operate the park, hire employees, and collect the tenants' rent. At the end of five years, the association could either purchase the property or vacate.
Appellants received no response to their offer. As a result, appellants decided to close the park. Jeffrey M. Brown, who had appellants' power of attorney, sent notices of eviction by certified mail to all tenants on June 5 and 6, 1986. The notice stated:
It is regrettable after 28 years as a Mobile Home Park, but notice for eviction, pursuant to current 1985 Florida State Statute 723.061(1)(d), is herein given.
Due to a projected change of use of the land, it shall be necessary for you to remove your personal property (to include your mobile home and all appurtenances) prior to January 1, 1987, and secure other accommodations.
Although Jeffrey M. Brown owned a mobile home inside the park, he neither paid rent nor resided there. Furthermore, he did not mail a notice of eviction to himself.
The eviction notices caused phone calls and protests by the tenants. Appellants responded by asking the tenants why they had not acted sooner when they were offered a chance to purchase the park or execute a lease purchase option. Appellants learned that many of the tenants knew nothing about the lease purchase option because the tenants' association had never informed the tenants of appellants' offer. The tenants asked appellants to reconsider, which appellants initially refused to do. However, appellants ultimately consented to again negotiate for a lease purchase option.
On June 27, 1986, Jeffrey M. Brown sent a letter to all tenants. In the letter, Brown outlined appellants' efforts to sell the mobile home park to the tenants' association prior to the eviction and that appellants had only recently learned of the association's failure to convey the offer to the tenants. Brown informed the tenants that appellants had:
[R]econsidered, reworked the offer to our bottom line, even without negotiations from the association. We feel it is fair to both sides and certainly a better solution than what most everyone is faced with.
Time is of the essence  while as of that meeting only one person had moved their Mobile Home, plans by others are progressing. Once, as I estimate it, 10  20% leave the park it will become uneconomical for your group to execute such a lease.
Jeffrey M. Brown outlined the proposed lease/purchase option which appellants had offered to the tenants' association at a meeting on June 25, 1986. Brown concluded the letter by saying:
At that meeting, we re-offered a lease with an option to buy. Again, timing is critical for you. We know there are certainly bad feelings out there.
We realize now, most of you didn't know about this offer  which is why we are presenting it to each of you personally ourselves.
There are certainly many things that will need to be done and of course a lease will need to be drafted, including all necessary details.
This letter is two fold in propose [sic]:

*734 1) To inform you of the possibility of a lease/option. (We didn't feel it was our obligation  but knew it needed to be done. You might want to postpone your immediate plans in order that a solution regarding a lease may be worked out.)
2) To determine the true interest to see if this is feasible.
We need your IMMEDIATE RESPONSE. This is not a contract but rather an indication of your interest.
After this letter, appellants discussed the lease purchase option with a new tenants' association. In early August 1986, the new association sent a package to all tenants. Included in that package was a letter from Jeffrey M. Brown to the tenants dated August 2, 1986. The letter began "A SOLUTION HAS BEEN FOUND!!" The letter went on to explain the negotiations of the previous months and the concessions made by appellants. In the letter, Jeffrey M. Brown outlined the new lease, which would be an eight-year lease with $75,000 start-up costs being contributed by appellants. The letter concluded:
Time is certainly critical to each one of you that would like to stay; your immediate response  will halt other vacancies, and if all works well, will allow you to stay. I hope you respond immediately  the choice is now yours!
The first item in the package was a letter from the new association to the tenants dated August 4, 1986. The letter explained that the new tenants' association was making a "last-ditch" effort to keep the park. The association urged the tenants to work together and to respond quickly to the new proposed lease to save the park. An enclosure to the letter outlined the proposed lease and requested the tenants to vote in favor of the lease.
The proposed lease did not receive the requisite approval and no contract was ever signed. On December 3, 1986, appellants mailed a "reminder of the notice of eviction" to each of the tenants. In this letter, appellants reminded the tenants that they were to be out of the park by January 1, 1987.
At trial, Jeffrey M. Brown and appellants testified that during the negotiations with the new association, appellants never took down the "For Sale" signs or said that appellants would rescind or extend the notice of eviction. Jeffrey M. Brown testified that he never told the association during the negotiations that the notice of eviction was being rescinded. According to Brown, he tried to make it very clear whenever he spoke with people that the notice had not been rescinded. A form letter was introduced at trial in which appellants stated:
Legal notice was given on June 5th, 1986 and granted well over the statutory 6 months notice requirements. Throughout all lease negotiations, it was always without question stated that there was no rescinding, and no extensions of the notice of eviction.
The particular letter in evidence was sent to "John S. Powell" and dated December 22, 1986. However, Brown testified that this letter was sent to any individuals who requested extensions or who were having trouble moving out.
Appellant James Brown testified that he did not approach any tenants who were leaving the park and ask them to stay. Nor did appellant ask those who had left the park to return. Appellant testified that he never told anyone during lease negotiations that he would not evict them because of the negotiations. According to James Brown, the purpose of the lease option was to permit him and his wife to get out of the mobile home business.
Members of the new tenants' association all testified that throughout the negotiations, appellants never indicated that appellants would waive or rescind the notices of eviction, or extend them beyond December 31, 1986. In fact, appellants specifically told the association that they were not waiving or rescinding the notices. Appellants indicated to the association that if negotiations failed, appellants were going to go ahead with the eviction. The president of the tenants' association testified that the association always made it a point to indicate to the tenants that the eviction had not been revoked.
*735 At issue in this case is the interpretation of section 723.061(1)(d), Florida Statutes (1985), which provides:
(1) A mobile home park owner may evict a mobile home owner or a mobile home only on one or more of the grounds provided in this section.
... .
(d) Change in use of the land comprising the mobile home park, or the portion thereof from which mobile homes are to be evicted, from mobile home lot rentals to some other use, provided all tenants affected are given at least 6 months' notice, or longer if provided for in a valid rental agreement, of the projected change of use and of their need to secure other accommodations.
Clearly, the statute does not expressly require the mobile home park owners to specify in the notices of eviction what the nature of the projected change of use of the land will be. Furthermore, there does not appear to be any valid reason for requiring the mobile home park owner to specify the actual change in use in the eviction notice. Thus, we agree with the appellants' assertion that the trial court erred in finding their notices of eviction failed to comply with section 723.061(1)(d), Florida Statutes (1985).
We also agree with the appellants' contention that the trial court erred in ruling that the notices of eviction, pursuant to section 723.061(1)(d), Florida Statutes (1985), were deficient because Jeffrey M. Brown did not send one to himself. Jeffrey M. Brown, owner of a mobile home in the park, was appellants' son and actually prepared the notices pursuant to his parents' power of attorney. He was also the real estate agent handling all negotiations to sell or lease the property. Obviously, Jeffrey M. Brown had actual express notice of the eviction. Furthermore, Jeffrey M. Brown was not contesting the eviction, the sufficiency of the notice of eviction, or the failure to furnish himself with a notice of eviction.
Although not exactly on point, the rationale of Symons Corp. v. Tartan-Lavers Delray Beach, 456 So.2d 1254 (Fla. 4th DCA 1984), is applicable to the instant case. In Symons Corp., this court stated:
In cases upholding the sufficiency of the designation of an owner in the Notice of Owner under a Mechanics' Lien statute, the courts note that if the owners, or others, were not misled, prejudiced or injured by the claimed defect in the Notice, especially in the case of an honest mistake, the lien is not vitiated by such defect.
Id. at 1259.
In the instant case, appellees were in no way prejudiced, injured, or misled by Jeffrey M. Brown's failure to mail a notice of eviction to himself. Appellees cannot rely upon this technical defect in notice to support their conclusion that the appellants did not comply with section 723.061(1)(d), Florida Statutes (1985). Furthermore, Jeffrey M. Brown's testimony that he mailed notices of eviction to all tenants, excluding himself, was unrebutted. Therefore, appellees' assertion that appellants failed to prove all tenants affected were given notice is not supported by the record. Since there is competent substantial evidence that all 194 tenants were mailed notices of eviction, the trial court erred in granting a directed verdict and in ruling that appellants failed to prove notice of eviction to all 194 tenants of the mobile home park.
The trial court concluded, as a matter of law, that the notice of eviction had, in essence, been waived by appellants' letters and conduct. Generally, the issue of waiver is considered a question of fact to be resolved by the jury. Manzo v. Patch Pub. Co., 403 So.2d 469, 471 (Fla. 5th DCA 1981); Shaw v. Massachusetts Mutual Life Ins. Co., 298 So.2d 183, 185 (Fla. 1st DCA 1974), cert. denied, 312 So.2d 759 (Fla. 1975). A question of fact should not be withheld from the jury unless, as a matter of law, no proper view of the evidence could possibly sustain a verdict in favor of the non-moving party. Shaw, 298 So.2d at 185.
Although the appellants' letters could be construed to waive the eviction notice, appellants presented considerable facts indicating *736 that appellees were aware that the notice had not been waived. Jeffrey M. Brown and appellants testified, inter alia, that during the negotiations with the new association, appellants never took down the "For Sale" signs or said that appellants would rescind or extend the notice of eviction. Members of the tenants' association testified that throughout the negotiations appellants never indicated that appellants would waive or rescind the notices of eviction, or extend them beyond December 31, 1986. The president of the tenants' association testified that the association always made it a point to indicate to the tenants that the eviction had not been revoked.
Clearly, there is conflicting evidence as to whether appellants' letters to the tenants' association constituted a waiver of the eviction notice. Examining this evidence in a light most favorable to appellants, the trial court erred in directing a verdict on the issue.
Since this case is being reversed and remanded to the trial court, we reverse the award of attorney's fees to appellee, Betty Simmons, and the remaining appellees. Thus, it is also unnecessary to address appellee/cross appellant's, Betty Simmons, cross appeal on the issue of the applicability of the contingent fee multiplier to the award of attorney's fees incurred by her.
As to the cross appeal filed by all appellees, we affirm the trial court's denial of the motion for summary judgment filed by appellees/cross appellants, Rexford Trew and Joan Trew. According to cross appellants, the eviction notice was not effective under the statute until the date received by cross appellants. Since cross appellants Trew received their notice on June 10, 1987, they argue the notice was insufficient because a statutory change effective on June 10 required cross appellees to provide one year's notice of a change in use rather than six months' notice. Cross appellees argue that the notice is effective at the date of mailing, rather than the date of receipt.
Section 723.061(1)(d), Florida Statutes (1985), provides:
Change in use of the land comprising the mobile home park, or the portion thereof from which mobile homes are to be evicted, from mobile home lot rentals to some other use, provided all tenants affected are given at least 6 months' notice, or longer if provided for in a valid rental agreement, of the projected change of use and of their need to secure other accommodations.
Cross appellants argue that this provision requires that the tenant actually receive the notice. Cross appellants contrast the use of the term "given" with other subsections of the statute which require "delivery" of the notice.
Despite the use of the different terminology in the statute, there is no indication that subsection (1)(d) requires actual receipt of the notice. The statute specifies in subsection (3) that:
[D]elivery of any written notice required by this section shall begin on the date of postmark and be by certified or registered mail, return receipt requested, addressed to the mobile home owner at his last known address.
§ 723.061(3), Fla. Stat. (1985). Although subsection (1)(d) uses the terminology "given notice," the definition of notice in subsection (3) should be applied. There is no indication in the statute that the drafters intended a more stringent notice requirement to be utilized in a change of use situation.
In the instant case, appellants/cross appellees mailed the notices of eviction to each tenant by certified mail. Appellants/cross appellees submitted a list of tenants who were mailed the notices of eviction to the court. The lists are marked "return receipt requested," bear a postage receipt, and are postmarked "Lake Worth, Fla. Lucerne Sta." The lists are postmarked June 5 and 6, 1986. Since the lists are postmarked prior to June 10, 1986, only six months' notice was required and the trial court correctly denied cross appellants' motion for summary judgment. Therefore, cross appellants Trew were given notice in accordance with section 723.061, Florida Statutes (1985).
*737 In summary, we answer the certified question in the negative and we conclude that the trial court erred in ruling that the notices of eviction were defective under section 723.061, Florida Statutes (1985). Furthermore, the trial court erred in ruling that the June 27 and August 2, 1986 letters, as a matter of law, constituted a waiver of the eviction notices served pursuant to section 723.061. Thus, we reverse and remand for a trial on the issue of whether the appellants' conduct constituted a waiver of the notices of eviction. Since the case is being reversed, we therefore reverse the attorney's fees awarded to all appellees. We also decline to address Betty Simmons' cross appeal on attorney's fees. As to the Trews' cross appeal, we affirm the denial of the Trews' motion for summary judgment.
AFFIRMED IN PART; REVERSED IN PART, AND REMANDED.
STONE, J., and WEBSTER, PETER, D., Associate Judge, concur.