559 So.2d 1190 (1990)
James E. BRATE, Jr., Neptune Partners, Ltd., William A. Britt, Appellants,
v.
CHULAVISTA MOBILE HOME PARK OWNERS ASSOCIATION, INC., Appellee.
Nos. 88-01106, 88-01107 and 88-01144.
District Court of Appeal of Florida, Second District.
February 28, 1990.
Rehearing Denied April 30, 1990.
*1191 Warren M. Goodrich, Steven L. Brannock, and David N. Finkelstein of Holland & Knight, Tampa, for appellant Neptune Partners, Ltd.
William S. Josey of Alpert, Josey, Grilli, Paris & Hanna, P.A., Tampa, for appellant James E. Brate, Jr.
Peter A. Dubensky of Harllee & Porges, P.A., Bradenton, for appellant William A. Britt.
John T. Allen, Jr. and Christopher P. Jayson of John T. Allen, Jr., P.A., St. Petersburg, for appellee.
FRANK, Acting Chief Judge.
James Brate, Jr. and William A. Britt owned the Chulavista Mobile Home Park in Hillsborough County. They sold the park to Neptune Partners. The Chulavista Home Owners Association brought an action against Britt, Brate and Neptune alleging that the sale of the park violated the Mobile Home Sales Act because Britt and Brate did not offer the Association the right of first refusal prescribed in section 723.071(1)(b), Florida Statutes (1983). Following a nonjury trial the court voided the sale and required certain acts to be performed consistent with the statute. Britt, Brate and Neptune have appealed from the final judgment. We reverse.
Mobile home park owners are subject to unique requirements impairing the unfettered alienation of their realty. Section 723.071 provides in its pertinent parts that:
(1)(a) If a mobile home park owner offers a mobile home park for sale, he shall notify the officers of the homeowners' association created pursuant to ss. 723.075-723.079 of his offer, stating the price and the terms and conditions of sale.
(b) The mobile home owners, by and through the association defined in s. 723.075 shall have the right to purchase the park, provided the home owners meet the price and terms and conditions of the mobile home park owner by executing a contract with the park owner within 45 days, unless agreed to otherwise, from the date of mailing of the notice and provided they have complied with ss. 723.075-723.079. If a contract between the park owner and the association is not executed within such 45-day period, then, unless the park owner thereafter elects to offer the park at a price lower than the price specified in his notice to the officers of the homeowners' association, he has no further obligations under this subsection, and his only obligation shall be as set forth in subsection (2).
(2) If a mobile home park owner receives a bona fide offer to purchase the park that he intends to consider or make a counteroffer to, his only obligation shall be to notify the officers of the homeowners' association that he has received an offer and disclose the price and material terms and conditions upon which he would consider selling the park and consider any offer made by the homeowners provided the home owners have complied with ss. 723.075-723.079. The park owner shall be under no obligation to sell to the home owners or to interrupt or delay other negotiations, and he shall be free at any time to execute a contract for the sale of the park to a party or parties other than the home owners or the association. (Emphasis added).
We have not found any decision involving the application, interpretation or construction of the foregoing statutory scheme. This case appears to be one of first impression. The relevant statutory provisions contemplate the existence of an association at the moment when the "park owner offers a mobile home park for sale." § 723.071(1)(a), Fla. Stat. (1983). The term "offer" as it is used in section 723.071(1)(a) and defined in section 723.071(3)(b) means "any solicitation by the park owner to the *1192 general public." The association, as a condition of its ability "to exercise the rights provided in s. 723.071 ... shall be a corporation ... of which not less than two-thirds of all of the mobile home owners within the park shall have consented, in writing, to become members or shareholders." § 723.075, Fla. Stat. (1983). The association's entitlement to pre-sale notice is further conditioned upon its compliance with sections 723.075-723.079. § 723.071(1)(b) and (2), Florida Statutes (1983). Although Britt, Brate and Neptune have launched a multipronged attack upon the Association's claim to a right of first refusal prior to the sale to Neptune, we have winnowed this matter down to the question of whether the trial court erred in its determination of the threshold concern  was the sale to Neptune the outgrowth of an offer by Britt and Brate to sell the park to the general public? If it were not such an offer, the Association would not acquire a right of first refusal. In resolving this one issue, we need not reach the questions of whether the Association enjoyed a two-thirds membership at the time of the sale, had at that moment complied with sections 723.075-723.079, or whether Britt and Brate enjoyed an exemption from section 723.071(1) by reason of section 723.071(4). Our review of the record compels the conclusion that the trial court was in error in its finding that Britt and Brate solicited the sale to Neptune, as a member of the general public, with the result that the sale was governed by subsection (1) of section 723.071, Florida Statutes (1983).
As we have noted above, section 723.071(3)(b) defines "offer" as "any solicitation by the park owner to the general public." We reject the trial court's determination that Britt and Brate offered the park for sale to the general public. The record discloses that at a time well prior to the sale to Neptune, a limited partnership engaged in the business of acquiring mobile home parks, Neptune had purchased a park from Britt and Brate. Following that transaction Brate was convicted of a felony resulting in a prison term. The evidence reveals that Brate needed money for his defense, and that he desired to leave his family with funds. Neptune, without inspiration from Britt and Brate, transmitted several offers during a nine month period to Britt and Brate in an attempt to purchase the park. Britt and Brate, however, were not in agreement as to whether the park should be sold. Neptune communicated its offers through Weis, a principal in the real estate brokerage firm of Steve Weis Realty, Inc., who attempted on several occasions to put the deal together. Weis was not, however, given a listing agreement to sell the property nor did he advertise the property for sale. Weis testified that he had offered to list the property on several occasions and Brate consistently refused. Further, Weis stated that it was Neptune who communicated with him for the purpose of purchasing the park. We find no substantial competent evidence from which it can be said that Britt and Brate held their park out to the general public for sale. No signs were posted at or near the property, there were no for-sale notices placed in newspapers and, indeed, it appears that Britt was unwilling to sell the park until the moment of closing.
We are not confronted in this proceeding with, nor do we purport to pass upon, any question of whether section 723.071(1) offends, either in a constitutional or common law setting, the right of mobile home park owners to enjoy unrestricted alienation of their real property. We must acknowledge, however, that most regulatory statutes affecting realty, which have withstood attack, focus upon the use of property, and not its alienation. See, e.g. Hillsborough County v. Westshore Realty, Inc., 444 So.2d 25 (Fla. 2d DCA 1983); Miller v. MacGill, 297 So.2d 573 (Fla. 1st DCA 1974); see also Seagate Condominium Association, Inc. v. Duffy, 330 So.2d 484, 486, n. 2 (Fla. 4th DCA 1976) ("There is a distinction between restraints on alienation and restraints on use."); Kass v. Lewin, 104 So.2d 572 (Fla. 1958). Thus, our sensitivity to any limitation upon the alienation of real property induces us to view the relevant portions of chapter 723 in a light most favorable to the vendors, Britt and Brate. The adoption of this policy complements *1193 the principle that "[s]ince the legislature is presumed to know the meaning of the words it utilizes and to convey its intent by use of specific terms, we must apply the plain meaning of those words, if they are unambiguous." Caloosa Property Owners Association, Inc. v. Palm Beach County Board of County Commissioners, 429 So.2d 1260, 1264 (Fla. 1st DCA), pet. for review denied, 438 So.2d 831 (Fla. 1983). We find absolutely no ambiguity in section 723.071(3)(b)'s use of the word "offer" which, in turn, is definitionally dependent upon the meaning of the word "solicitation." The dictionary meaning of "solicitation" is: earnest request; a seeking to obtain something from another. Webster's New Universal Unabridged Dictionary, Second Edition, 1983. As we have said, the record will not support either a finding of solicitation or an offer to the general public.
Finally, we are led to the conclusion that Neptune's purchase of the property is subject only to subsection (2) of section 723.071. Unlike subsection (1), however, subsection (2) does not impose any restriction upon the park owners' ability to sell the park. In fact, subsection (2) does not require the park owner to sell to an association even if it meets the terms and conditions of the offer. In short, the park owners' freedom under subsection (2) to alienate the park is as unrestrained as it would be if subsection (2) did not exist.
Based upon the foregoing, we reverse and vacate the final judgment and remand for the entry of a final judgment dismissing the complaint.
PARKER and PATTERSON, JJ., concur.