576 So.2d 1294 (1991)
Jennie HARRIS, et al., Petitioners,
v.
MARTIN REGENCY, LTD., Etc., Respondent.
No. 75097.
Supreme Court of Florida.
January 17, 1991.
Rehearing Denied April 16, 1991.
*1295 Joanna R. Martin, Stuart and Russell S. Bohn of Edna L. Caruso, P.A., West Palm Beach, for petitioners.
Bob L. Harris of Haben & Culpepper, P.A., Tallahassee, for respondent.
Thomas A. Munkittrick, Largo, amicus curiae for Federation of Mobile Home Owners of Florida, Inc.
Jack M. Skelding, Jr. and David D. Eastman of Parker, Skelding, Labasky & Corry, Tallahassee, amicus curiae for Florida Manufactured Housing Ass'n, Inc.
BARKETT, Justice.
We have for review Harris v. Martin Regency, Ltd., 550 So.2d 1160 (Fla. 4th DCA 1989), in which the following question was certified as one of great public importance:
Is the conversion of land comprising a mobile home park from use as a mobile home park to vacant land, or to no use, a "change in use" within the contemplation of section 723.061(1)(d), Florida Statutes (1985)?
550 So.2d at 1161. We answer the question in the affirmative as qualified below and quash the decision of the district court.[1]
Respondent Martin Regency, Ltd., a limited partnership, owns the Regency Mobile Home Park in Martin County, Florida. On August 30, 1985, the partnership sent eviction notices to its tenant mobile home owners, including petitioners, as required by section 723.061(1)(d) of the Florida Statutes (1985). Section 723.061(1)(d) provides:
(1) A mobile home park owner may evict a mobile home owner or a mobile home only on one or more of the grounds provided in this section.

... .
(d) Change in use of the land comprising the mobile home park, or the portion thereof from which mobile homes are to be evicted, from mobile home lot rentals to some other use, provided all tenants affected are given at least 6 months' notice, or longer if provided for in a valid rental agreement, of the projected change of use and of their need to secure other accommodations.
(Emphasis supplied.)
In its notice, Martin Regency, Ltd., gave the following reason for eviction:
For many extenuating circumstances, including the decrepit condition of the "A" park, the very high cost of making minor repairs to the water and sewer facilities, and the probability of further restrictive legislation at the state level imposed on owners of mobile home parks, I must regretfully advise you that I wish to vacate the Regency Mobile Home Park. Florida law, in particular, Section 723.061(1)(d), F.S., requires that a six (6) month notice be given to residents of the Park. The six months will expire from the date stated above. Please consider this as your notice of the projected change in use of the land comprising the mobile home park. During the next few months you will need to secure other accommodations.
(Emphasis in original.)
Although the notice gave tenants until the end of February 1986 to vacate, the partnership later extended the deadline until May 1, 1987.[2] When the property remained occupied by petitioners on May 1, the partnership gave them five days' notice to vacate, warning that failure to vacate *1296 would result in eviction. Petitioners again did not vacate. Hence, on June 5, 1987, Martin Regency, Ltd., filed complaints for eviction in the county court against petitioners. Petitioners counterclaimed against Martin Regency, Ltd., and general partner James A. Kern, focusing on the good faith and fair dealings requirement of section 723.021 of the Florida Statutes (1985), and asking for damages for abuse of process and intentional infliction of emotional distress. Petitioners contended that Martin Regency, Ltd., wanted the land vacated so it could sell the property as vacant land to get a better profit.
The actions were consolidated and transferred to the circuit court where the parties moved for summary judgment on respondent's eviction action. On February 24, 1988, the circuit court denied summary judgment sought by the mobile home owners and granted summary judgment in favor of Martin Regency, Ltd., finding, in relevant part, that the notice satisfied the requirements of section 723.061(1)(d):
If the land is no longer going to be used as a mobile home park and in effect becomes vacant land, to be put into some other commercial use or no use at all[,] this constitutes a change of use. To pinpoint exactly what the land is going to be used for is not critical, so long as it is not a mobile home park. This interpretation falls well within the legislative intent in passing the legislation in question here. To do otherwise could initiate a constitutional problem or create an unreasonable result or consequence for the property owner. The mobile home park owner is required to follow certain procedures also, such as that proper and reasonable notice shall be provided the tenant in order to avoid the grievous abuses to mobile home owners which the legislature also sought to accomplish in this legislation. Chapter 723, Fla. Stat. as it now exists and existed at the filing of this action is a bona fide and successful effort to balance the rights of both sides in this dispute.
The circuit court conditioned summary judgment on the basis that the property not be used again as a mobile home park or anything related thereto. The court gave petitioners until March 1, 1989, to vacate.
The Fourth District Court affirmed. First, it held that the legislature did not intend to require the park owner to specify what the "change in use" would be, relying on its prior decision in Brown v. Powell, 531 So.2d 731 (Fla. 4th DCA 1988):
"Clearly, the statute does not expressly require the mobile home park owners to specify in the notices of eviction what the nature of the projected change of use of the land will be. Furthermore, there does not appear to be any valid reason for requiring the mobile home park owner to specify the actual change in use in the eviction notice. Thus, we agree with the appellants' assertion that the trial court erred in finding their notices of eviction failed to comply with section 723.061(1)(d), Florida Statutes (1985)."
Harris, 550 So.2d at 1161 (quoting Brown, 531 So.2d at 735). Second, the court held that the term "change in use" in section 723.061(1)(d) contemplated "converting the land comprising the mobile home park from use as a mobile home park to vacant land, or to no use," but certified the question above. Id.
We begin our analysis by agreeing with the district court's conclusion that nothing in either section 723.061(1)(d) or other provisions in chapter 723, read in pari materia, requires a mobile home park owner to "`specify in the notices of eviction what the nature of the projected change of use of the land will be.'" Harris, 550 So.2d at 1161 (quoting Brown, 531 So.2d at 735). The question that remains to be resolved is what is a valid "change in use" under section 723.061(1)(d).
The purpose of the eviction statute is "to ameliorate and correct as far as possible by exercise of the police power what the Legislature has found to be evils inimical to the public welfare in the subject considered. Protection of mobile home owners from grievous abuses by their landlords, or mobile home park owners, was found by the Legislature to be essential." Stewart v. Green, 300 So.2d 889, 891 (Fla. *1297 1974); see also Palm Beach Mobile Homes, Inc. v. Strong, 300 So.2d 881 (Fla. 1974). Implementing these protections involves restricting property rights guaranteed by article I, section 2 of the Florida Constitution, which may be permissible if the restrictions are "`reasonably necessary to secure the health, safety, good order, [and] general welfare.'" Shriners Hospitals for Crippled Children v. Zrillic, 563 So.2d 64, 68 (Fla. 1990) (quoting Golden v. McCarty, 337 So.2d 388, 390 (Fla. 1976)); see also Palm Beach Mobile Homes, Inc., 300 So.2d at 884 (the degree of a constitutionally protected property right "must be determined in the light of social and economic conditions which prevail at a given time").
Where mobile homes are concerned, substantial constitutional property rights are implicated on both sides of the debate. See art. I, § 2, Fla. Const. It is clear that a mobile home park owner has a constitutional property right to use the land for any lawful purpose. It is just as clear that mobile home owners are not mere tenants  they are home owners, and, as we recognized in Stewart, "[h]ome ownership is an important aspect of family life." 300 So.2d at 892. Hence, we observed that "a hybrid type of property relationship exists between the mobile home owner and the park owner and ... the relationship is not simply one of landowner and tenant. Each has basic property rights which must reciprocally accommodate and harmonize." Id.
The legislature attempted to accommodate these competing property rights by allowing a mobile home park owner to evict a tenant mobile home owner only in limited circumstances. See § 723.061, Fla. Stat. In holding such limitations to be constitutionally permissible, the Court in Stewart reasoned that "[i]f mobile home park owners are allowed unregulated and uncontrolled power to evict mobile home tenants, a form of economic servitude ensues rendering tenants subject to oppressive treatment in their relations with park owners and the latters' overriding economic advantage over tenants." 300 So.2d at 892. At the same time, we recognized that the eviction statute cannot, consistent with constitutional principles, be construed to force a mobile home park owner to accept the perpetual tenancy of a mobile home owner. Palm Beach Mobile Homes, Inc., 300 So.2d at 888. Hence, legislation allowing "[t]he abbreviation of the tenancy must be consistent with the total circumstances and not inconsistent with the existing evils recognized by the legislature nor the remedies sought to be accomplished." Id. (emphasis supplied).
Among the total circumstances the legislature has considered in allowing and limiting eviction are the protections afforded mobile home owners in the event the owner puts the park up for sale. See § 723.071(1), Fla. Stat.[3] That section requires a mobile home park owner to give tenant mobile home owners the right to *1298 buy the property if the park owner "offers a mobile home park for sale."
The legislature also specified that "[e]very ... duty within [chapter 723] imposes an obligation of good faith and fair dealings in its performance or enforcement." § 723.021, Fla. Stat. (1985). Thus, even if a park owner offered a facially legitimate reason for eviction, the eviction may be voided if the mobile home owners can prove the park owner acted in bad faith.
Reading these provisions in pari materia with the eviction statute, it would be illogical to conclude that the legislature intended the "change in use" provision of section 723.061(1)(d) to be applied broadly to allow a park owner to evade the requirements of section 723.071(1). Let us assume for the sake of argument that petitioners are correct in contending that Martin Regency, Ltd., wanted the park vacated merely to get a better profit by offering the property for sale as vacant land. Once all the tenants are evicted, the property no longer would be a mobile home park subject to chapter 723, and the mobile home owners would have been denied their statutory right to purchase the park. Allowing park owners to evade section 723.071(1) would be inconsistent with clear legislative policy.[4]
At the same time, it is possible that the park owner simply may have wanted to stop operating a mobile home park, resolving that the easiest way to do so would be to change the use of the property to vacant land until the owner decides what to do with it. We see nothing in the statutory scheme to show that the legislature intended to prohibit a property owner from doing exactly that.
Thus, we conclude that the only logical way to interpret "change in use" consistent with legislative intent and policy is to hold that section 723.061(1)(d) does not authorize an eviction if the purpose of the change in use is to sell the park property and evade the requirements of section 723.071(1). If the park owner in good faith merely wants to leave the land vacant, the owner may do so under the statute.[5] However, if the mobile home owners have good cause to believe that a park owner evicted them under section 723.061(1)(d) merely to sell the property and evade section 723.071(1), they may void the eviction.
Turning to the facts of this case, it is undisputed that Martin Regency, Ltd., stated in 1985 that the reason for eviction was because of a projected change in use of the park property. But the record is not clear as to whether Martin Regency, Ltd., intended to change the use of the property to vacant land for the purpose of selling it while evading the requirements of section 723.071(1), or whether it merely wanted to change the property to vacant land. These are factual questions to be resolved by the trial court, precluding summary judgment on the record before us. If the trial court concludes that Martin Regency, Ltd., wanted to avoid the requirements of section 723.071(1) in order to sell the property as vacant land, respondent's eviction action should be denied. If, however, the trial court finds that Martin Regency, Ltd., intended merely to change the use of the property to vacant land, then the eviction *1299 action should be found appropriate under the circumstances of this case.
In conclusion, we answer the certified question with a qualified affirmative: We hold that section 723.061(1)(d) of the Florida Statutes (1985) does contemplate the conversion of a mobile home park to no use or vacant land unless the purpose of the change in use is to sell the land and evade the requirements of section 723.071(1). We quash the decision of the district court, vacate the award of appellate attorney's fees, and remand with directions to have the trial court vacate its order of summary judgment and conduct proceedings consistent with this opinion.
It is so ordered.
McDONALD and KOGAN, JJ., and EHRLICH, Senior Justice, concur.
OVERTON, J., dissents with an opinion.
GRIMES, J., dissents with an opinion, in which SHAW, C.J., and OVERTON, J., concur.
OVERTON, Justice, dissenting.
I fully concur with Justice Grimes' dissent. The majority, by its construction of section 723.061(1)(d), Florida Statutes (1985), has opened the door to a possible holding by the federal courts that the entire statute is unconstitutional under the fifth and fourteenth amendments of the United States Constitution. Such a holding would leave mobile home owners totally unprotected.
GRIMES, Justice, dissenting.
Because of the expense and difficulty that mobile home owners incur in relocating, the 1972 legislature restricted evictions from mobile home parks to instances in which there is nonpayment of rent, violation of statute or ordinance, or violation of park rule or regulation. § 83.271, Fla. Stat. (Supp. 1972). In recognizing the constitutional implications of requiring the land to be used permanently as a mobile home park, Palm Beach Mobile Homes, Inc. v. Strong, 300 So.2d 881 (Fla. 1974), the legislature added a section permitting the park owner to change the use of the land providing he gave notice a specified length of time before the change in order to give the mobile home owners a reasonable opportunity to move. § 83.69(d), Fla. Stat. (1973). With minor changes, the latter provision is now codified as section 723.061(1)(d), Florida Statutes (1985), which is the focus of our inquiry in this case.
I agree with the majority that when a mobile home park owner decides to allow the land to become vacant, this constitutes a change of use as contemplated by section 723.061(1)(d) and the statute does not require the park owner to specify the nature of the change in use in the notice to the mobile home owners. I cannot agree that the statute prohibits the owner from closing the park and offering the property for sale as vacant land.
The majority opinion is premised upon the conclusion that by selling the property as vacant land the park owner has evaded section 723.071(1), Florida Statutes (1985). Yet, section 723.071(1) only provides that if the owner offers the mobile home park for sale, he shall notify the mobile home owners and give them the first option of buying the park upon the same terms. The statute does not require the park owner to give the mobile home owners first option to buy the land when it is no longer being used as a mobile home park. Of course, at that point the mobile home owners would no longer be interested in it anyway.
In closing a park with the intent of selling the property as vacant land, the owner is not seeking to "evade" the provisions of section 723.071. Were the statute applicable to this situation, the park owner would have no incentive to avoid its requirements. The statute gives the mobile home owners a right of first refusal, but they must meet the conditions of sale set by the park owner. The park owner would have no reason to avoid offering the property to the mobile home owners, whose only right under the statute is to purchase the property at his price and under his terms.
The majority seems to suggest that it is evil for the owner to close the park and *1300 thereafter sell the property as vacant land in the hope of getting a higher price. However, chapter 723 is not designed to keep the park owner from selling the property at its best price. Section 723.061(1)(d) is only intended to guarantee the mobile home owner ample time to relocate in the event the park owner decides to change the use of the property. It does not say that the owner cannot close the park and sell the property as vacant land. The majority has created a restriction out of whole cloth to accomplish what it perceives as a laudable social objective.[6] The effect of the majority ruling is that the owner may only sell his land while it is still a mobile home park. There is no language in chapter 723 which would warrant such a construction, and, if there were, it would be stricken as an unconstitutional deprivation of the use of property.
I respectfully dissent.
SHAW, C.J., and OVERTON, J., concur.
NOTES
[1] We have jurisdiction pursuant to article V, section 3(b)(4) of the Florida Constitution.
[2] Subsequent to the date when Martin Regency, Ltd., issued the eviction notice, the legislature extended the six-month notice requirement to one year. Ch. 86-162, § 11, Laws of Fla.
[3] Section 723.071 of the Florida Statutes (1985) provides in relevant part:

723.071 Sale of mobile home parks. 
(1)(a) If a mobile home park owner offers a mobile home park for sale, he shall notify the officers of the homeowners' association created pursuant to ss. 723.075-723.079 of his offer, stating the price and the terms and conditions of sale.
(b) The mobile home owners, by and through the association defined in s. 723.075, shall have the right to purchase the park, provided the home owners meet the price and terms and conditions of the mobile home park owner by executing a contract with the park owner within 45 days, unless agreed to otherwise, from the date of mailing of the notice and provided they have complied with ss. 723.075-723.079. If a contract between the park owner and the association is not executed within such 45-day period, then, unless the park owner thereafter elects to offer the park at a price lower than the price specified in his notice to the officers of the homeowners' association, he has no further obligations under this subsection, and his only obligation shall be as set forth in subsection (2).
(c) If the park owner thereafter elects to offer the park at a price lower than the price specified in his notice to the home owners, the home owners, by and through the association, will have an additional 10 days to meet the price and terms and conditions of the park owner by executing a contract.
....
(3)... .
(b) As used in subsection (1), the term "offer" means any solicitation by the park owner to the general public.
[4] Nonetheless, Martin Regency, Ltd., asserts that the district court's interpretation does not enable the partnership to circumvent the right-to-purchase statute because it has not technically offered the park for sale. "Offer" is defined in subsection 723.071(3)(b) as "any solicitation by the park owner to the general public." See Brate v. Chulavista Mobile Home Park Owners Ass'n, 559 So.2d 1190 (Fla. 2d DCA 1990). We believe, however, that Martin Regency, Ltd., misperceives the problem. The problem created by the district court's broad interpretation of section 723.061(1)(d) is that it allows a park owner to purposefully circumvent the mobile home owner protections of section 723.071(1) merely by not making an "offer" until it evicts all the tenants.
[5] We note that in 1986, the legislature added a provision requiring that when a park owner gives an eviction notice predicated on a change of use of the land, "[w]ithin 90 days from the time the park owner gives the 1-year notice, he shall notify the homeowner of his election to either buy the mobile home, or relocate the mobile home to another park owned by the park owner, or pay to relocate the mobile home to another mobile home park." Ch. 86-162, § 11, Laws of Fla. (emphasis supplied).
[6] Significantly, section 723.061 now has been amended further in order to address the needs of the mobile home owner in the event the park owner changes the use of the land. See § 723.061, Fla. Stat. (1989). Under the current statute, the park owner must give one year's notice and either elect to buy the mobile homes or finance their relocation to another park.