Jeff SHARPE and Debbie
Sharpe, Appellants,

v.

George TRAIL and Lana Trail, Appellees.

No. S–5618.

Supreme Court of Alaska.

Aug. 18, 1995.

Rehearing Denied Sept. 22, 1995.

Michael J. Zelensky, Ketchikan, for appellants.

Gregory W. Lessmeier, Hughes, Thorsness, Gantz, Powell & Brundin, Juneau, for appellees.

Before MOORE, C.J., RABINOWITZ, MATTHEWS and COMPTON, JJ., and BRYNER, Justice pro tem.*

OPINION

BRYNER, Justice pro tem.

I. INTRODUCTION

Jeff and Debbie Sharpe sued George and Lana Trail, alleging wrongful eviction from a mobile home park in Ketchikan. Superior Court Judge Thomas E. Schulz granted the Trails' motion for summary judgment. The Sharpes appeal, contending that genuine issues of material fact existed as to the Trails' compliance with AS 34.05.225, the statute governing eviction from mobile home parks. We affirm.

II. FACTS AND PROCEEDINGS

The Sharpes owned a "double wide" mobile home on a rented space—space 147—in the Mountain View Trailer Courts, a mobile home park in Ketchikan. On April 10, 1990, the Trails, who had purchased the mobile

home park the previous year, sent notice to the Sharpes requesting that they remove the mobile home from the park by November 1, 1990. The notice stated, in relevant part, that the Trails were "planning on converting that space to parking." Unable to sell or move their mobile home, the Sharpes vacated it. The home was repossessed and was removed from the trailer park in the fall of 1991.

In the spring of 1990, shortly after the Sharpes vacated the mobile home but while it still remained in place, the Trails began parking construction equipment on space 147. After the mobile home was removed, the Trails added some fill material to the property. In the fall of 1991, the Trails removed the construction equipment from the property and began allowing travel trailers and recreational vehicles to park on it, but did not allow the space to be used by mobile homes.

On March 20, 1992, the Sharpes filed suit alleging, among other things,[1] wrongful eviction. The Trails answered and moved for summary judgment. As to the Sharpes' wrongful eviction claim, the Trails' summary judgment motion asserted compliance with subsection (a)(4) of AS 34.03.225, the statute governing eviction of mobile homes from mobile home parks. Subsection (a)(4) of the statute authorizes the owner of a mobile home park to evict a tenant upon 180 days notice if the owner desires to make "a change in the use of the land comprising the mobile home park, or the portion of it on which the mobile home to be evicted is located." The Trails asserted that they had provided the Sharpes with the requisite 180-day notice and had in fact changed the use of the land on which the Sharpes' mobile home had been located.

In response, the Sharpes alleged the existence of two disputed issues. First, the Sharpes claimed that the Trails' use of the

* Sitting by assignment made pursuant to article IV, section 16 of the Alaska Constitution.

1. The Sharpes also alleged that they were the beneficiaries of an agreement between the Trails and the prior owners of Mountain View Trailer Park that was intended to assure the Sharpes' continued occupancy of space 147 after the

Trails purchased the property. The Trails' motion for summary judgment denied any agreement protecting the Sharpes' occupancy, and the superior court granted the Trails' motion for summary judgment on this issue. The Sharpes do not challenge this aspect of the superior court's summary judgment order.

property to park commercial vehicles did not amount to a "change in the use of the land" within the meaning of AS 34.03.225(a)(4); second, they asserted that the Trails acted in bad faith in evicting them "under the guise of a change in land use." In support of their claim of bad faith, the Sharpes pointed out that the Trails had recently begun renting space 147 for use by travel trailers and recreational vehicles—a use the Sharpes characterized as identical to the original use. In addition, the Sharpes presented evidence of statements the Trails had made indicating that they wanted to evict the Sharpes' mobile home because it was unsightly. The Sharpes argued that these statements, coupled with the Trails' recent rental of space 147 for parking by travel trailers and recreational vehicles, created a factual inference that the Trails had never intended to change the use of the property.

Judge Schulz rejected the Sharpes' arguments, concluding that no material factual issues remained in dispute and that the Trails were entitled to judgment as a matter of law.[2] The Sharpes then filed this appeal, in which they argue that the superior court erred in rejecting their bad faith claim and in finding a change in the use of space 147.

## III. DISCUSSION

### A. Standard of Review

■ In ruling on a summary judgment motion, the trial court "must determine whether any genuine issue of material fact exists and whether the moving party is entitled to judgment on the law applicable to the established facts. All reasonable inferences of fact from proffered materials must be drawn against the moving party and in favor of the non-moving party." *Wright v. State,*

824 P.2d 718, 720 (Alaska 1992) (citations omitted). On review, this court uses its independent judgment and will reverse the trial court's ruling "if the pleadings and evidence presented reveal either the existence of any genuine issues of material fact or that the moving party is not entitled to judgment as a matter of law." *Foster v. Hanni,* 841 P.2d 164, 170 (Alaska 1992).

### B. Change in Use of the Land

The trial court found that the Trails satisfied the statutory requirements of AS 34.03.225 in that they changed the use of the property and provided the Sharpes with the requisite 180 days notice. The Sharpes argue that the trial court erred as a matter of law in reaching this conclusion. The Sharpes contend that "the conversion to parking is insufficient to satisfy" the statutory requirement of "a change in use of the land comprising the mobile home park or the portion of it on which the mobile home to be evicted is located." AS 34.03.225(a)(4).

We have previously noted that the purpose of Alaska's mobile home eviction statute is to protect the rights of mobile home owners:

AS 34.03.225 limits a landlord's right to evict a mobile home tenant to only four reasons. Several other states have similar laws, the rationale of which has received considerable attention. Such legislation provides mobile homeowners with a measure of protection in their dealings with mobile home park operators. Mobile homeowners are thought to need more protection than do ordinary renters because the general shortage of mobile home spaces places them in an unequal bargaining position which can lead to abuses by the landlord, and because eviction entails

---

**2.** In relevant part, Judge Schulz stated:

So I think the change of use was, ah, met the conditions of the statute. I don't [think] there has to be an awful lot done to the land as such, I think all that has to happen is that the owner of the land decides that he is going to use it for something else or not use it at all. And under our statute, he's entitled to do that and he gave them six months notice. That finding, of course, kind of deals also with the plaintiffs' good faith argument because in order to find a lack of good faith, I think that the court would have to find or be able to infer from the evi-

dence at least, that there was a factual issue whether the defendants actually changed the use of the land. I don't think there is. The plaintiffs have contended that Mrs. Trail didn't like the looks of their trailer. She has filed an affidavit that says that she thought their trailer looked fine and she never told them she didn't like it, and so there's a factual dispute there, but given the terms of our statute and the notice they gave the plaintiffs and the use to which they put the land, I can't, there's no triable issue on that record.

the expense of moving a mobile home which could result in a loss of equity in the mobile home.

*Osness v. Dimond Estates, Inc.*, 615 P.2d 605, 607–08 (Alaska 1980) (footnotes omitted).

Although we have not previously interpreted the "change in use" provision of subsection (a)(4), the provision is not unique. Courts of other states, construing virtually identical provisions, have held that a viable "change in use" need not be a drastic one or one entailing substantial alteration of the land occupied by a mobile home. For example, in *Crown Diversified Industries, Inc. v. Watt*, 415 So.2d 803, 805 (Fla.App.1982), the Florida Court of Appeals held that a change in use need not be so substantial as to justify rezoning. And in *Harris v. Martin Regency, Ltd.*, 576 So.2d 1294, 1298 (Fla.1991), the Florida Supreme Court stated "[i]f the park owner in good faith merely wants to leave land vacant, the owner may do so under the statute." *Id.* at 1298.

■ The foregoing cases provide strong support for the conclusion that a sufficient change in use occurred here. In the present case, it is undisputed that, following the eviction of the Sharpes' mobile home, the Trails used space 147 by parking construction vehicles on the property, and, later, by renting the property for parking by travel trailers and recreational vehicles. The parking of construction vehicles on space 147 plainly amounts to a new use of the property. The Sharpes cite no authority to support the proposition that this new use should be deemed insufficient to qualify as a "change in use" under AS 34.03.225(a)(4).

■ The Trails' more recent use of the property for rental to travel trailers and recreational vehicles presents a marginally closer issue. In our view, however, renting to travel trailers and recreational vehicles amounts to a significantly different use than rental for occupancy by a mobile home. Case law appears to recognize a distinction between mobile homes and other vehicles that are capable of being occupied: " 'The mobile home is a detached, single family dwelling unit designed for long term occupancy, which distinguishes it from the motor home or travel trailer.' " *Cider Barrel Mobile Home Court v. Eader*, 287 Md. 571, 414 A.2d 1246, 1248 n. 3 (1980) (quoting Stubbs, *The Necessity for Specific State Legislation to Deal with the Mobile Home Park Landlord–Tenant Relationship*, 9 Ga.L.Rev. 212 n. 1 (1974–75)).

■ This distinction serves as the basis for the special protection Alaska law accords to mobile home occupants. Statutes like AS 34.03.225, which limit the rights of landowners to evict mobile homes from rented spaces, give recognition to the unique character of mobile homes and to the special relationship that arises when a mobile home owner rents space:

> Mobile homes come to rest in established parks, the wheels are generally removed, they are anchored to the ground, because of forces of the wind, connections with electricity, water and sewerage are made.... The removal from one park to another becomes more than a mere hitching to a truck or tractor and pulling it away.

*Palm Beach Mobile Homes, Inc., v. Strong*, 300 So.2d 881, 886 (Fla.1974). *See also Osness*, 615 P.2d at 607–08. Indeed, the distinct status of mobile homes is implicitly recognized and given legal significance in Alaska's eviction statute: by its own terms, AS 34.03.225 applies only to "mobile homes," "mobile home park operators," and "mobile home dwellers" and does not extend to travel trailers or recreational vehicles.[3]

We conclude that the Trails' undisputed use of space 147 for the parking of commercial vehicles, travel trailers and recreational vehicles constitutes a "change in the use of the land" under AS 34.03.225(a)(4).

**3.** *Cf.* AS 45.30.100, which defines a "mobile home" for purposes of Alaska's Mobile Home Sales Act, AS 45.30.011–.100, as "a vehicle designed and equipped for human habitation, and which may be drawn by a motor vehicle only when authorized by a permit." Under this definition, typical travel trailers and recreational vehicles, which are designed for routine highway travel, are plainly excluded from the definition of "mobile home," since Alaska regulations require permits only for oversize and overweight vehicles. *See* 17 AAC 25.010.110; 3 AAC 35.120.

## C. *Good Faith*

The Sharpes separately argue that a genuine factual dispute existed as to the Trails' good faith in ordering their eviction. "[E]ven if a park owner offered a facially legitimate reason for eviction, the eviction may be voided if the mobile home owners can prove the park owner acted in bad faith." *Harris,* 576 So.2d at 1298. But, as the trial court correctly recognized in the present case, good faith is not an abstract proposition, but must instead be determined by reference to the statutory "change in use" requirement. As the trial court stated:

> [I]n order to find a lack of good faith, I think that the court would have to find or be able to infer from the evidence at least, that there was a factual issue whether the defendants actually changed the use of the land. I don't think there is.

Under AS 34.03.320, the Trails were required to act in good faith in evicting the Sharpes.[4] However, AS 34.03.360(5) defines "good faith" to mean "honesty in fact in the conduct of the transaction concerned." Under the statutory definition of good faith, if the Trails honestly decided to change the use of space 147—in other words, if they acted with "honesty in fact" in undertaking the change in use—their underlying motives for doing so were immaterial.[5] *Cf. Crown Diversified,* 415 So.2d at 806 (proof of bad faith through fraudulent representations would suffice for relief).

**4.** AS 34.03.320 provides:
> Every duty under this chapter and every act that must be performed as a condition precedent to the exercise of a right or remedy under this chapter imposes an obligation of good faith in its performance or enforcement.

**5.** The dissent is mistaken in asserting that our decision applies an objective standard of good faith. We apply a subjective test, but hold that good faith must be defined in reference to AS 34.03.225(a)(4), which expressly grants owners the right to evict on short notice for purposes of changing the use of the land. The requirement of good faith is thus satisfied if the owner acts in subjective good faith in effecting a permanent change in the use of the land on which a mobile home is situated. Of course, the same might not be true if the underlying basis for the Trails' decision to evict were independently impermissible (e.g., racial discrimination) or otherwise vio-

Here, undisputed evidence in the record establishes that, upon evicting the Sharpes, the Trails did in fact change the use of space 147. This change in use continued in effect at the time the trial court ruled on the Trails' motion for summary judgment. We may accept as true the evidence suggesting that the Trails wanted to evict the Sharpes because they found their mobile home unsightly. In the face of uncontradicted proof establishing an actual and continuing change in use, however, this evidence cannot, standing alone, support an inference that the Trails acted in bad faith in carrying out the eviction.[6]

## IV. *CONCLUSION*

The superior court properly concluded that undisputed evidence established the Trails' compliance with the eviction requirements of AS 34.03.225(a)(4); accordingly, the court did not err in granting the Trails' motion for summary judgment.

The judgment is AFFIRMED.

RABINOWITZ, Justice, with whom COMPTON, Justice, joins, concurring in part and dissenting in part.

I agree with the court's holding that the Trails satisfied the "change in use" provision found in AS 34.03.225(a)(4) (governing eviction of mobile homes from mobile home parks). I disagree with the court's interpretation of the good faith requirement of AS

lated public policy (e.g., retaliatory conduct). In the present case, however, the evidence suggesting that the Trails were motivated by their displeasure with the appearance of the Sharpes' mobile home reveals no independently impermissible basis for the decision to evict.

**6.** The Sharpes' argument that the evidence supports a factual inference of bad faith might have merit if we accepted their premise that the Trails' recent use of space 147 for travel trailers and recreational vehicles was essentially identical to the use of the space for a mobile home. Accepting this premise, the evidence would arguably tend to support the view that the Trails intended to change the use of their property only temporarily, as a pretext for the eviction. In light of our conclusion that rental to travel trailers and recreational vehicles amounts to a changed use, however, this aspect of the Sharpes' good faith argument is moot.

34.03.320 and therefore dissent from Part II.C of the opinion.[1]

In interpreting AS 34.03.320, the court adopts an objective standard for determining whether the Trails acted in good faith. Alaska Statute 34.03.360(5) defines "good faith" as "honesty in fact in the conduct of the transaction concerned." The court reasons,

> Under the statutory definition of good faith, if the Trails honestly decided to change the use of space 147—in other words, if they acted with "honesty in fact" in undertaking the change in use—their underlying motives for doing so were immaterial.

I think this holding is incorrect for the following reasons.

First, in interpreting a statute we generally favor a reading of the statute which gives effect to all its provisions. *Homer Elec. Ass'n v. Towsley*, 841 P.2d 1042, 1045 (Alaska 1992). If the trailer park owner must violate one of the other substantive provisions of the chapter in order to violate AS 34.03.320, then this section is superfluous. For example, in the present case, if the Sharpes had a remedy under the "change in use" provision they would not have needed to argue that the Trails had acted in bad faith.[2]

Second, a majority of other jurisdictions have held that the identically worded good faith requirement in the Uniform Commercial Code[3] is independently actionable and requires a subjective inquiry into the motiva-

tions of the contracting parties.[4] For example, in *Reid v. Key Bank of Southern Maine, Inc.*, 821 F.2d 9 (1st Cir.1987), the court held that the defendant bank had violated its duty to perform in good faith by requiring accelerated payment of the plaintiff's loan even though the loan agreement provided that the bank could do so at will. In upholding the following jury instruction, the court focused on the subjective definition in UCC § 1–201(19):

> One acts with good faith, in general, when one acts honestly.

> Good faith means that one acts without any improper motivation. One acts with the truth and not for some ulterior motive that is unconnected with the substance of the agreement in question when one is acting with good faith.

*Id.* at 14–15 & n. 2. Under the court's view in the present case, AS 34.03.320 does not require a similar search for "an ulterior motive."

Finally, the court's construction of AS 34.03.360(5) deviates from this court's precedents. In both *Mitford v. de Lasala*, 666 P.2d 1000, 1007 (Alaska 1983) and *Hagans, Brown & Gibbs v. First National Bank of Anchorage*, 783 P.2d 1164, 1168 (Alaska 1989), we engaged in subjective inquiries into the motivations of the defendants in order to determine if they had breached the implied covenants of good faith and fair dealing in their respective contracts. In *Luedtke v.*

---

**1.** AS 34.03.320 provides:
> **Obligation of good faith.** Every duty under this chapter and every act that must be performed as a condition precedent to the exercise of a right or remedy under this chapter imposes an obligation of good faith in its performance or enforcement. The aggrieved party has a duty to mitigate damages.

**2.** In note 5 of its opinion, the court suggests that the good faith provision may require a subjective inquiry in a narrow set of cases where the letter of the law has been satisfied but where the owner's motive is "independently impermissible (e.g., racial discrimination) or otherwise violated public policy (e.g., retaliatory conduct)." This interpretation of the statute runs up against the same objection. Retaliatory conduct is prohibited by AS 34.03.310, and it is tautological that conduct which is independently impermissible, must be impermissible because it runs afoul of another statute or the constitution.

**3.** The official commentary to § 1.302 of the Uniform Residential Landlord and Tenant Act (AS 34.03) states that the good faith requirement was adapted from § 1–203 of the Uniform Commercial Code. The UCC provides that an implied duty of good faith exists in the performance of every contract. UCC § 1–203 (AS 45.01.203).

**4.** *See Reid v. Key Bank of Southern Maine, Inc.*, 821 F.2d 9, 13 (1st Cir.1987) (listing jurisdictions which have allowed recovery on theories of breach of good faith); *see also K.M.C. Co. v. Irving Trust Co.*, 757 F.2d 752, 761 (6th Cir.1985) (suit under New York law). *Contra Management Assistance, Inc. v. Computer Dimensions, Inc.*, 546 F.Supp. 666, 677 (N.D.Ga.1982), *aff'd*, 747 F.2d 708 (11th Cir.1984) (interpreting Georgia law); *Chandler v. Hunter*, 340 So.2d 818, 821 (Ala.App.1976).

*Nabors Alaska Drilling, Inc.,* 834 P.2d 1220, 1224 (Alaska 1992), we expanded the analysis, holding that the UCC covenant of good faith and fair dealing imposes both an objective *and* subjective standard. Only recently in *Hillman v. Nationwide Mutual Fire Insurance Co.,* 855 P.2d 1321, 1324 (Alaska 1993), did we deviate from this course by holding that in order to recover for the tort of bad faith in first party insurance cases, the insured must prove objective bad faith on the part of the insurer. Because the weight of authority suggests that good faith is comprised of both subjective and objective components, I am of the view that the holding in *Hillman* should be limited to its facts.

In conclusion, I think that case law supports a reading of AS 34.03.320 which makes a good faith requirement independently actionable; that the duty to act in good faith whether implied contractually or imposed statutorily requires more than mere compliance with the letter of the law; and that determining whether a party has fulfilled such a duty requires a subjective inquiry into the motivation of the party in acting as they did. This is precisely the evidence which the Sharpes proffered in their affidavits to demonstrate that a genuine issue of material fact prevented the entry of summary judgment.[5] I would therefore reverse the superior court's order granting summary judgment against the Sharpes on their claim under AS 34.03.320 and remand the case to afford the Sharpes an opportunity to present evidence to the superior court on the issue of the Trails' good faith under AS 34.03.320 and AS 34.03.360(5).

---

**5.** The Sharpes argue that the Trails changed the use of the lot which the Sharpes mobile home was on because the Trails had moved into a house located nearby and did not like the appearance of the "double-wide" mobile home. Debbie Sharpe stated by affidavit that "Mrs. Trail had often complained of the 'unsightliness' of our mobile home."